NEIDLINGER and another *v.* INSURANCE COMPANY OF NORTH AMERICA.

*(Circuit Court, E. D. New York.* July 22, 1880.)

MARINE INSURANCE—DAMAGE FROM MOISTURE IN HOLD.

The memorandum clause of a policy of marine insurance, which was issued 28 days before the certificates were issued, contained an agreement that grain of all kinds was warranted by the assured free from average, unless general. It also contained the following: "Warranted by the insured free from damage or injury from dampness, change of flavor, or being spotted, discolored, musty, or mouldy, except caused by actual contact of the sea water with the articles damaged, occasioned by sea perils. In case of partial loss by sea water damage to dry goods, cutlery, or other hardware, the loss shall be ascertained by a separation and sale of the portion only of the contents so damaged, and not otherwise; and the same practice shall obtain as to all other merchandise as far as practicable." Under this policy barley was shipped in sacks and stowed away in tiers, and during the first part of the voyage the ship encountered perils of the seas which caused her to leak, and thereby sea water came in actual contact with sacks of barley on the lower tier. The ship put into Rio de Janeiro for repairs, and unloaded all the barley except such as composed the lower tier and some at the ends. After repairs the sacks of barley and other cargo were restored. On arriving at the port of destination the lower tier was found damaged by actual contact with sea water, and in the rest of the barley the malting qualities of the barley had been destroyed by dampness in the ship's hold. *Held,* that, under the agreement in the policy, the damage from the vapor and moisture in the hold was not damage from actual contact with sea water.

This was a libel *in personam,* filed in the district court, on a policy of marine insurance. That court dismissed the libel and the libellants appealed. This court found the following facts:

"In October, 1876, the libellants obtained from the respondent, by open policy and certificates, two insurances upon barley, from San Francisco to New York by the ship Blue Jacket, one of which insurances was for $19,000, on 21,068 43-48 bushels of barley, loss, if any, payable to the order of the libellants, Bernheiner and Schmid; and the other of which insurances was for $17,600, on 21,068 43-48 bushels of barley, loss, if any, payable to the order of others of the libellants. In each certificate the insurance was stated to be 'subject to 20 per cent. particular average, valued at sum hereby insured;' 'said loss to be adjusted with the holder hereof in conformity with the conditions of the said policy.' The policy was in the usual American form, against perils of the seas. The memorandum clause of the policy, which was issued 28 days before the certificates were issued, contained an agreement that grain of all kinds was warranted by the assured free from average unless general. It also contained the following:

"'Warranted by the insured free from damage or injury from dampness, change of flavor, or being spotted, discolored, musty, or mouldy, except caused by actual contact of the sea water with the articles damaged, occasioned by sea perils. In case of partial loss by sea damage to dry goods, cutlery or other hardware, the loss shall be ascertained by a separation and

sale of the portion only of the contents so damaged, and not otherwise; and the same practice shall obtain as to all other merchandise as far as practicable.'

"The barley so insured was the property of the libellants.   It was shipped at San Francisco in October, 1876, in 16,800 sacks, marked 'F. & Co.,' which contained 42,137 38-48 bushels, one-half of which was the amount stated in each of the two certificates.   Besides this barley of the libellants, the cargo of the ship contained other barley also shipped in sacks and consigned to one David Jones, and pig lead, wool, rags, borax, and other merchandise.   The sacks of barley, both of Jones and of the libellants, were stowed in tiers, the lower tier resting upon a grain ceiling over the pig lead, old sails being spread for dunnage between the ceiling and the ground tier of sacks.

"The ship sailed from San Francisco on the eleventh of October, 1876, with the above-described cargo on board, and on her voyage encountered perils of the seas, which caused her to leak, and thereby sea water came in actual contact with sacks of barley of Jones and the libellants, on the lower tier and in the wings.   By reason of the leak the ship put into Rio de Janeiro, where she arrived on the fifteenth of January, 1877.   All of the cargo, except the sacks of barley composing the lower tier and some in the ends of the ship, was taken out.   The ship was docked and repaired, and the sacks of barley and other cargo were restored.

"On the eighteenth of March, 1877, the ship sailed for New York, where she arrived without further disaster on the eleventh of May, 1877.   Upon discharging the cargo in New York, certain of the sacks of barley, especially those composing the lower tier, showed marks of sea water, and were caked and badly damaged by actual contact with sea water.   Among those were sacks belonging to the libellants and others belonging to Jones.   The rest of the barley was bright in color, and, to all external appearances, merchantable; but by testing samples it was discovered that the malting quality of the barley had been destroyed, and that, in consequence, it was unsalable as merchantable barley fit for malting.   All the barley of the libellants was sold by them at auction, and brought prices ranging from 50 to 55 cents per bushel, except about 800 bushels, which brought 47 cents per bushel.   Its sound value at New York, if uninjured, would have been $1.10 per bushel.   The number of sacks of barley of the libellants, the contents of which were so damaged by actual contact of sea water with the sacks, was not over 5,360, and the extent of damages to these 5,360 sacks was not equal to 20 per cent. of the value of the barley insured.   If the damage to the barley in the sacks of barley which so came in actual contact with salt water were added to the damage to the other barley of the libellants, the total would exceed 90 per cent. of the value of the barley insured.   This last-mentioned damage was caused by dampness in the ship's hold, and it is a proper conclusion, from the evidence, that the sea water which leaked into the ship, prior to her arrival at Rio, by creating a damp atmosphere in the hold, caused germination to commence in the barley, which, being thereafter checked, left the barley bright and, to all appearance, sound, but incapable of further germination.   By reason of the putting in of the ship at Rio de Janeiro, general average expenses were incurred and stated.   The amount thereof contributable by the cargo of

the libellants was two sums of $616.64 each, and these two sums, amounting together to $1,233.28, were paid by the respondent. The libellants have not sustained a loss equal to 20 per cent. of the value of the insured property, occasioned by any peril insured against."

*John E. Parsons* and *William W. Goodrich,* for libellants.
*Clifford A .Hand,·* for respondent.

BLATCHFORD, C. J. The libellants rest their case on a single point. They contend that, for the purpose of construing the policy, the barley is to be treated as if it had been shipped in bulk, and not in sacks; the insurance being of so many bushels, not divided and not specified as being in sacks, and there being no evidence that the respondent knew that the barley was shipped in sacks. The answer to this view is that the policy contains a provision that, in cases of partial loss by sea damage to any merchandise insured under it, the loss shall, so far as practicable, be ascertained by a separation and sale of only the damaged portion of the contents of the packages, and not otherwise. This clause is to be applied so as, in good faith, to give the respondent the benefit of the contract exempting it from liability for damage by dampness unless through actual contact of sea water with the articles damaged, occasioned by sea perils. There must be a separation of, at least, sacks with which sea water has come in contact. If there is to be a separation of the damaged parts of packages, there must be a separation of sacks, some part of the contents of which has been damaged by actual contact with salt water. If the barley was in fact shipped in packages as sacks, the respondent is entitled to the benefit of that actual fact in ascertaining the loss.

According to the certificates, the loss is to be adjusted in conformity with the conditions of the policy. Although the certificates specify only so many bushels of barley, yet the policy substantially provides that, if any merchandise insured under it is in packages, those with which sea water has come in actual contact shall be separated. On this principle, and assuming that all the grain in any sack which has come in actual contact with sea water is to be regarded as having come in actual contact with sea water, the damage is not 20 per cent. in respect of all such grain. The case is one not different in principle from what it would be if the certificates had specified so many sacks of barley, and had valued the contents of each sack.

There is no liability for damage from vapor arising from the sea water which has come in contact with one sack, so far as such vapor or the dampness thereof affects the barley in another sack, with which other sack sea water has not otherwise come in contact. *Cary*

v. *Boylston Ins. Co.* 107 Mass. 140. To hold that the contact of such vapor is the actual contact of sea water, is to fritter away the good sense of the provision, which was introduced after decisions in such cases as *Baker* v. *Manuf'rs Ins. Co.* 12 Gray, 603. The view of the libellants would require the same decision under the actual contact clause as without it. I do not understand the case of *Woodruff* v. *Commercial Ins. Co.* 2 Hilton, 130, as being an authority for the libellants. The observations of the district judge in his decision in this case, as to that case, seem to be well founded.

If all the damage in this case had been from vapor arising from sea water which had found its way into the ship, without any other actual contact of such sea water with any barley, it might as well then, as now, have been contended that the contact of such vapor was the actual contact of sea water. But this would take away all force from the actual contact clause.

The libel must be dismissed, with costs to the respondent in the district court and in this court.