TAYLOR, Jr., *qui tam*, v. GILMAN.

*(Circuit Court, S. D. New York. August 13, 1885.)*

1. COPYRIGHT—"CHARTS"—SHEETS OF PAPER CONTAINING TABULATED INFORMATION.
    The word "chart," as used in the copyright law, does not include sheets of paper exhibiting tabulated or methodically arranged information.
2. SAME—INFRINGEMENT BY AGENTS—RIGHT TO RECOVER PENALTY FROM PRINCIPAL.
    The penalty or forfeiture given to a party aggrieved by the infringement of his copyright cannot be recovered from a principal whose agents have, without his knowledge, been guilty of such infringement.

Action Under Rev. St. § 4965.

*R. Robertson,* for plaintiff.

*Andrew Gilhooly,* for defendant.

WHEELER, J. This action is brought upon section 4965, Rev. St., to recover one dollar, half to the use of the United States and half

to the use of the plaintiff, for each of several hundred thousand copies of a work alleged to be a chart, copyrighted by the plaintiff, and printed by the defendant, and found in his possession. The original copyright act of 1790 provided for maps, charts, and books. 1 St. at Large, 124. A chart then was a marine map, as is shown by all the dictionaries of the time, both English and American. Historical or other prints were added by the act of 1802, (2 St. at Large, 171;) musical compositions, cuts, and engravings, by the act of 1831, (4 St. at Large, 436;) photographs, by the act of 1865, (13 St. at Large, 540;) and paintings, drawings, chromos, statues, statuary, and models or designs intended to be perfected as works of the fine arts, by the act of 1870, (16 St. at Large, 198.) A distinction was made between recoveries for the infringement of the copyright of a book, and those for that of the other works, by the act of 1831; the former being fixed at fifty cents and the latter at one dollar for each sheet. This distinction was preserved in the act of 1870, by giving such damages as might by recovered in a civil action in any court of competent jurisdiction for the infringement of the copyright of a book, and one dollar for each sheet of all but paintings, statues, or statuary, and $10 for each copy of those found in the possession of the infringer, and is continued to the present time. Rev. St. §§ 4964, 4965. Thus the literary composition of books to be read has for a long time been protected in one mode, and the production of works of art to be viewed in another mode, and charts have always been placed among the works of art. Sheets of paper exhibiting tabulated or methodically arranged information came to be called charts, so that a definition of chart covering them was put into the edition of Worcester's Dictionary published in 1864, and into that of Webster's Dictionary published in 1865. The plaintiff's work was printed upon a single sheet doubled so as to make two leaves with four pages. On the first page was the title and contents, the name of the author, and notice of the copyright. On the second, was the popular and electoral votes for president from 1789 to 1880, inclusive, by political parties, with the names of candidates and explanatory notes. On the third, was the popular vote for the leading candidates for president in 1880 by states, with a note giving the scattering vote and the electoral vote for president and vice-president by states. On the fourth, was the electoral college for 1884 by states, with blanks for the number of each for each leading political party, the total electoral vote, the number necessary for a choice, the day of election, and the day of the meeting of electoral colleges. The alleged infringing copies are printed upon a single sheet folded in the same manner. On the first page is an advertisement of the Great American Tea Company. The second, third, and fourth are identical in matter with the plaintiff's; and in arrangement, except that on the second page of the plaintiff's the columns are divided and printed across the page, and on that page of the infringement they are printed entire up and down

the page. These publications would, perhaps, come within this new definition of chart. They are tabular views of these votes methodically arranged, the notes being explanatory of the tables. Still, the compilation of these tables was a literary rather than an artistic performance. The printed work has leaves and pages, although these may not be necessary to constitute a book within the meaning of the copyright laws. *Clayton* v. *Stone*, 2 Paine, 382.

When books and charts were first protected by the copyright laws this work would not have been protected as a chart; nor for many years afterwards. No change has been made in the use of that term in the statute to indicate that congress intended that it should take to itself there any new definition. On the contrary, it has been separated from the word "book," and kept with the word "map," and other words of artistic import, thus showing an intention to continue its use in the same sense of a chart of the class with maps, and other works of art. *Mallan* v. *May*, 13 Mees. & W. 511; *Neal* v. *Clark*, 95 U. S. 704. When it is doubtful in what sense a word is used, it is proper to look at the purpose for which it is used. While this statute is remedial in so far as it furnishes a remedy to the party aggrieved, it is penal as to so much of the recovery as goes to the United States. The United States is not aggrieved in a civil sense; but the law is violated when the copyright is infringed, and punishment is inflicted to the extent of one-half the sum imposed. *Johnson* v. *Donaldson*, 18 Blatchf. 297; S. C. 3 FED. REP. 22; *Schreiber* v. *Sharpless*, 17 FED. REP. 589; *Schreiber* v. *Sharpless*, 110 U. S. 76; S. C. 3 Sup. Ct. Rep. 423. As a penal statute, it must be construed strictly, and not be held to include what it does not clearly cover, to make any one guilty by construction. TANEY, C. J., *U. S.* v. *Morris*, 14 Pet. 475. Although it was ruled at the trial, for the purpose of taking the evidence as to the whole case, that this might be found to be a chart, on full consideration now it appears that the word "chart," as used in the statute, will not include it.

The alleged infringement was done by the defendant's agents in the management of the Great American Tea Company for him, in his absence, and wholly without his knowledge, consent, or approval, for the purpose of disseminating the advertisement of the wares of that concern, which is owned by the defendant, but has been wholly in the control of others for several years, on account of his inability. A verdict was directed for the defendant, principally upon the ground that he could not be made liable in this action under these circumstances. The scope of the agency is to be inferred from the fact that the management of the business of the tea company was left wholly to the agents. The business consisted in dealing in teas and coffees, including advertising the goods extensively. The agents had full authority to do whatever was necessary about such advertising. The advertisement which took the place of the plaintiff's title page was no infringement of the plaintiff's rights. The election statistics

of the other pages had no relation whatever to the defendant's business. The agents had no authority to do anything about printing such statistics for him. The statistics served to give currency and admittance to the advertisement; and constituted a part of the vehicle to carry it, as an attractive picture or beautifully tinted paper would. Had the agents stolen such paper, or paper with such picture, or paper with these three pages of statistics printed upon it, and used either to print the advertisement upon, no one would probably claim that the defendant was thereby guilty of theft, and could justly be convicted of it. And, if not, it is not easy to see how the defendant is guilty of the offense of unlawfully copying those pages on account of what the agents did, although he might be liable civilly for the damages in either case. There are many cases where property is forfeited on account of some situation in which it is placed without the knowledge or consent of the owner, but in such cases the property only is proceeded against, and there is no conviction of the owner to affect his person or other property. *U. S.* v. *Brig Malek Adhel*, 2 How. 210; *Dobbins' Distillery* v. *U. S.* 96 U. S. 395. And there are cases where it is held that the act of the agent in the course of his employment is evidence against the principal in a criminal proceeding, but evidence which may be rebutted by showing want of knowledge, consent, or encouragement. *Com.* v. *Nichols*, 10 Metc. 259; *Attorney General* v. *Sidden*, 1 Cromp. & J. 219; *Rex* v. *Gutch*, 1 Moody & M. 433; *Rex* v. *Almon*, 5 Burr. 2686. Here this want appeared. Cases of sales of intoxicating liquor are instanced, but in such cases the statute frequently prohibits and punishes sales by agents and servants expressly. Where a penalty or forfeiture is given to a party aggrieved, so that the recovery is a remedy for the injury, the right to recover may be founded upon the doings of agents, the same as other rights of action. *Stockwell* v. *U. S.* 13 Wall. 531; *Attorney General* v. *Sidden*, 1 Cromp. & J. 219. That the recovery is for more than single damages, or of a fixed sum, is not material, if it is for compensation. *Burnett* v. *Ward*, 42 Vt. 80; *Newman* v. *Waite*, 43 Vt. 587. But when the penalty, or a part of it, is inflicted for punishment only, the guilt of the party to be punished should be established. *Schreiber* v. *Sharpless*, 6 FED. REP. 175. As the case is now considered, a verdict for the plaintiff would fail upon each of these grounds.

Motion for new trial denied.