SHELDON & CO. *v.* UNITED STATES (No. 985).[1]

LITHOGRAPHICALLY PRINTED PAPERS—CHARTS.

The question here is whether the articles of the importation are "charts" within the meaning of paragraph 416, tariff act of 1909. Reviewing the various pertinent decisions affecting this question it seems clear that the meaning of the word "chart" has been broadened since the first use of the term in tariff legislation and that the term was employed in the present law with this accepted broader meaning. "Charts" in paragraph 416 *eo nomine* describes the importation.

United States Court of Customs Appeals, February 28, 1913.

APPEAL from Board of United States General Appraisers. Abstract 28988 (T. D. 32655) and Abstract 29390 (T. D. 32751).
[Affirmed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Thomas J. Doherty*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

In the language of the board's opinion the articles here involved are described as follows:

The merchandise consists of articles of paper lithographically printed, with [which] exhibit in a pictorial manner the outline, form, and mechanical features of either a locomotive or an automobile. The various parts are accurately shown by superimposed paper flaps, arranged in proper order, and which are hinged so that they may be turned back to show the interior mechanism of the machine or engine.

To this description may be added the further statement that upon each main sheet and the various superimposed flaps different parts of the mechanism shown are numbered. These numbers appear to correspond to like numbers on an accompanying key sheet upon which, opposite the numbers, are given the appropriate names of the parts so numbered. It was found by the board, and is not otherwise claimed, that they are designed for the use of students.

The sole question is whether these articles are "charts" within the meaning of paragraph 416 of the act of 1909. The board affirmed the collector's action in so assessing them.

The paragraph reads as follows:

416. Books of all kinds, bound or unbound, including blank books, slate books and pamphlets, engravings, photographs, etchings, maps, charts, music in books or sheets, and printed matter, all the foregoing wholly or in chief value of paper, and not specially provided for in this section, twenty-five per centum ad valorem. * * *

---

[1] Reported in T. D. 33265 (24 Treas. Dec., 409).

It is not denied that if not dutiable as assessed they are dutiable as articles of paper lithographically printed under paragraph 412 of the same act.

It is contended by the importers in substance that the word "charts" as used in the paragraph, which seems to have first appeared in the tariff act of July 30, 1846, and to have been used in succeeding tariff acts down to and including the one here involved without material change in context, relates to hydrographic or marine maps and can not be held to *eo nomine* describe merchandise like that at bar.

The Government, to some extent at least, concedes that when the statute was first enacted the common meaning of the word "charts" was limited, as claimed by the importers, but it contends that the meaning of the word has long since been broadened in the common use and understanding, and that it can not be assumed that Congress alone remains in ignorance of the recognition by lexicographers and others of such broader signification of the word. It further urges that, in the decisions of the Board of General Appraisers hereinafter referred to, the broader meaning has been adopted, which meaning, it is claimed, Congress has approved by subsequently enacting two tariff statutes in which the word "charts" appears with no indication that it disagreed with the extended meaning attached thereto by the board and of which it had presumptive notice.

The first meaning given to the word "chart" by nearly if not all of the lexicographers at the present time is that contended for by the importers, although various of such authorities indicate that the word is now used with broader meanings that may include the articles here in question.

The nature of the issue has prompted us to refer briefly to all the cases cited by the parties that throw light upon the same.

The importers refer us to Taylor *v.* Gilman (24 Fed., 632) decided in 1885. This was an action to recover a penalty or forfeiture for violation of the copyright laws. In that case, as stated in the opinion by Wheeler, Judge, the original copyright act of 1790 provided for maps, charts, and books, and the learned judge was evidently satisfied that at the date of the statute a chart was limited to a marine map. In the opinion he states that in the process of time "sheets of paper exhibiting tabulated or methodically arranged information came to be called charts, so that a definition of chart covering them was put into the edition of Worcester's Dictionary published in 1864 and into that of Webster's Dictionary published in 1865." The articles before the court in that case, which were alleged to be an infringement of the plaintiff's copyright, seem to have consisted of single sheets doubled so as to make two leaves with four pages upon which was printed certain interesting tabulated political information.

The chart which was copyrighted by the plaintiff in that case was substantially like the one complained of, and the claimed infringement seems to have been the printed political information thereon. In discussing the case the court said:

These publications would, perhaps, come within this new definition of chart. * * * When books and charts were first protected by the copyright laws this work would not have been protected as a chart nor for many years afterwards. No change has been made in the use of that term in the statute to indicate that Congress intended that it should take to itself there any new definition.

The court then proceeded to apply the doctrine that a penal statute must be strictly construed and held that the plaintiff's claimed copyrighted article was not covered by the word "charts" in the copyright statute. In other words, that the copyright was invalid.

The importers also cite Ehret v. Pierce (10 Fed., 553), decided in 1880, where it was held in substance that (using the language of the syllabus) "an advertising card devised for the purpose of displaying paints of various colors, consisting of a sheet of paper having attached thereto square bits of paper painted in various colors, each square having a different color, with some lithographic work surrounding the squares, advertising the sale of the colors," was not the subject of a copyright as included in the words "book, map, chart, musical composition, print, cut, or engraving" used in the statute of 1831 to designate the subjects of copyright. The plaintiff in that case claimed it to be a chart within the meaning of the word as used in that statute.

The Government cites Drury v. Ewing (7 Fed. Cas., No. 4095), decided in 1862; also, the board decisions hereinafter referred to.

In Drury v. Ewing the complainant asked for an attachment for contempt for the violation of a perpetual injunction entered upon final decree in a bill to restrain the violation of complainant's copyright in what was referred to in the opinion as a chart for cutting dresses and basques for ladies and certain garments for boys, etc. The bill in the original case had alleged and the answer, by implication, admitted that the charts were the subject of copyright under the act of 1831, providing that any book or books, map, chart, or musical composition might be copyrighted. In defense of the contempt proceedings it was claimed that the complainant's chart was not the legitimate subject of a copyright as within the scope and intention of the act. The court held that it was not competent in that manner to impeach the decree in view of the pleadings and evidence upon which it had been entered. It then proceeded, however, to discuss the question as to whether or not the alleged charts were within the statute a subject of copyright, and after a very interest-

ing and exhaustive consideration of the subject came to the conclusion that the so-called charts were books within the meaning of that word as used in the copyright statute. That part of the court's opinion closes with this language:

Adopting this view of the law, it is not necessary to decide whether Mrs. Drury's copyright can be sustained as a "chart" or "print." These words are used in the statute as legitimate subjects of a copyright, and it would not imply a very forced construction to hold that the copyrighted work of Mrs. Drury's is included in one or both of these terms. The authorities, I think, would fully sustain such a conclusion.

In T. D. 17158, decided in 1896, the board had before it what were described as Marshall's diagrams or anatomical charts, which had been assessed as charts under paragraph 311 of the act of 1894 and were claimed to be dutiable as lithographic prints under paragraph 308. The board found, explicitly, that the articles were charts, but, nevertheless, held that they were more specifically provided for as lithographic prints from zinc in paragraph 308.

In Abstract 13758 (T. D. 27785), decided in 1906, the Board of General Appraisers held that sheets of cardboard cut out into the form of the human body and having superimposed hinged flaps lithographically printed attached to the one representing the cadaver as a base, which flaps contained lithographic reproductions of the organs, nerves, muscles, arteries, and veins of the body, so arranged as to show any particular organ or anatomical section, were charts within the meaning of paragraph 403 of the act of 1897, the predecessor of the paragraph involved in the case at bar, and not lithographic prints.

In Abstract 22164 (T. D. 30122), decided in November, 1909, the board considered sheets of cardboard printed and cut out, having some metal parts superimposed and arranged to illustrate the working of a high-tension magneto. They had been assessed as manufactures of metal under the act of 1897 and were claimed by the importers to be dutiable as charts under paragraph 403, above referred to. The protest was sustained. It appeared that the article was designed for the use of students.

These various citations, we think, clearly tend to show that in the common understanding the meaning of the word "charts" has been much broadened since the word was first used in the tariff statutes, and there is force in the Government's contention that in view of the fact that the act of 1897 was enacted after one and the act of 1909 after another of the above-mentioned decisions of the board, it should be presumed that Congress used the word "charts" in the last two tariff acts in such extended meaning, but it is not necessary to rest this decision wholly upon that ground.

In March's Thesaurus Dictionary of the English Language, published in 1906, the word "chart" is variously defined as "a sheet showing facts, a guiding map, a tabulated instrument, a paper on which information is exhibited," and other dictionaries of recent years, notably the Century, give to this word a similar extended meaning beyond that which evidently first attached thereto. We think such has come to be a common understanding of the meaning of the word, and that it is as appropriately so used as in the more limited earlier meaning thereof. It is common knowledge that in the lapse of years the ordinary meaning of words may change or may be extended, just as new words may come into use and others become obsolete.

Tariff statutes are made for the future as well as for the present, and an applicable commercial designation used therein reaches out and embraces subsequent merchandise, the existence of which may not be known to commerce prior to the enactment of a given tariff law. Pickhardt v. Merritt (132 U. S., 252); Newman v. Arthur (109 U. S., 132); United States v. Georgia Pulp & Paper Manufacturing Co. (3 Ct. Cust. Appls. 410; T. D. 32998).

If it be true that the commercial meaning of a word used in a tariff law may be applied to articles not then in existence, it seems logical, if in the lapse of time the common meaning of a word first used in a statute concededly broadens, that the later statutes, which employ the word after its common meaning has in fact become extended, use the same in its broader sense. Especially should this be true when the word in question is of so frequent and common use as the word "charts."

It must be borne in mind that in civil cases of the class before us the same reasons do not obtain for the rule of strict construction that was adopted in the case of Taylor v. Gilman, *supra*, that were there present.

A half century or more ago the word "maps" related to representations of land surfaces and "charts" to water surfaces. The charts were for use by mariners and designed among other things to guide them in their trips in waters to them unfamiliar, or if familiar, to aid them in keeping to a desired or safe course. It is an apt enlargement and extension of this early meaning of the word to allow it to now include articles like those at bar, which in form are somewhat similar to the early charts and seem to be adapted either to educate the unskilled as to the construction of the mechanical devices to which they relate or to assist those skilled therein in the use thereof.

Our conclusion is that the word "charts" as used in the paragraph *eo nomine* describes the importation in question, and the judgment of the Board of General Appraisers is therefore *affirmed*.