(C. D. 918)

## J. SPEYER *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 26, 1945)

*Strauss & Hedges* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*John J. McDermott,* special attorney), for the defendant.
*Lamb & Lerch* (*John G. Lerch and Kenneth G. Osborn* of counsel) as *amici curiae.*

Before OLIVER and COLE, Judges

OLIVER, Presiding Judge: These suits arising at the port of New York bring for determination the proper classification of merchandise imported under the invoice description of "Visculose Sponges." They were assessed by the collector at 60 per centum ad valorem under paragraph 31 (b) (2), Tariff Act of 1930, which reads as follows:

PAR. 31. (b) All compounds of cellulose (except cellulose acetate, but including pyroxylin and other cellulose esters and ethers), and all compounds, combinations, or mixtures of which any such compound is the component material of chief value:

    *      *      *      *      *      *      *

(2) made into finished or partly finished articles of which any of the foregoing is the component material of chief value, not specially provided for, 60 per centum ad valorem.

They are claimed by plaintiff to be dutiable at only 15 per centum ad valorem, as "all other sponges, not specially provided for," under paragraph 1545, reading as follows:

PAR. 1545. Sponges, commercially known as sheepswool, 30 per centum ad valorem; sponges, commercially known as yellow, grass, or velvet, 25 per centum

ad valorem; all other sponges, not specially provided for, 15 per centum ad valorem; manufactures of sponges, or of which sponge is the component material of chief value, not specially provided for, 25 per centum ad valorem.

The provisions of this paragraph have been modified under the flexible tariff provision (T. D. 45861) and by the reciprocal trade agreement with the United Kingdom (T. D. 49753) as to certain rates of duty prescribed therein, but these changes are not involved in this case.

It was mutually agreed and stipulated between counsel that the articles involved are composed in chief value of compounds of cellulose other than cellulose acetate. It was also agreed that the articles in question were not in existence or known in the trade and commerce of the United States before the year 1932.

Plaintiff contends that there is no ambiguity about the word "sponge" and that one of the definitions in Webster's New International Dictionary, Second Edition, 1936, page 2434, is plainly broad enough to include cellulose sponges:

7. Anything used in place of a sponge; as, a rubber bath *sponge*; a cotton *sponge* for mopping up blood in a surgical operation.

It is therefore claimed that the merchandise in question is a sponge, in fact, in name, and in use, within the common meaning of that term, and within the meaning of paragraph 1545, under authority of two well-established rules relating to the classification of imported merchandise:

(1) Statutes are made for the future as well as for the present.

(2) An *eo nomine* provision without terms of limitation, includes all forms of the article named.

It is the contention of defendant that the common or dictionary meaning of "sponges" embraces only articles of marine animal origin, and the articles at bar, concededly not of such origin, cannot be included within that meaning.

Defendant contends the legislative history of paragraph 1545 clearly establishes that Congress intended no other articles to be dutiable thereunder except those of marine animal origin.

Two witnesses testified on behalf of the plaintiff. The importer introduced in evidence a sample of these articles (exhibit 1). It is a rectangular-shaped block of porous material, approximately 2 x 4 x 6 inches in dimension, and very light in weight. He testified that he had been in the sponge and chamois business since 1939 and sells the natural or marine sponges as well as the cellulose articles. The cellulose sponges are also produced by an American manufacturer, and a circular describing this product and its uses was also received in evidence (illustrative exhibit A). Plaintiff further testified that the domestic cellulose sponge and the imported article are used exactly the same way as natural sponges, and that the imported articles are

sold as "Speyer's Visculose Sponge." A label and circular used in selling them were received in evidence (illustrative exhibits B and C).

Plaintiff's second witness stated he had been in the sponge and chamois business for 30 years; that his company handled every variety of sponge, including natural and cellulose sponges; that cellulose sponges are used "for most every type of use that a natural sponge is used for"; and that the imported article (exhibit 1) resembles in texture, absorbency, and strength the type of natural sponge known as sheep's-wool sponge.

On the record thus presented the question before us is whether this new article of commerce, not known at the time of the passage of the tariff act, properly falls within the meaning of the provision in paragraph 1545 for "all other sponges, not specially provided for."

It is well established that tariff statutes are made for the future as well as for the present, and an applicable commercial designation used therein reaches out and embraces subsequent merchandise the existence of which may not have been known to commerce prior to the enactment of a given tariff act. (*Sheldon & Co.* v. *United States*, 4 Ct. Cust. Appls. 42, T. D. 33265; *United States* v. *Downing et al.*, 16 Ct. Cust. Appls. 556, T. D. 43294; and *United States* v. *Salomon & Bro.*, 22 C. C. P. A. 490, T. D. 47483.)

However, an article entirely new, entering commerce after the passage of a tariff act, is not necessarily to be classified in a paragraph simply because, in a literal sense, it may be described therein. (*Gimbel Bros., Inc.* v. *United States*, 22 C. C. P. A. 146, T. D. 47111.)

The question of articles called sponges but manufactured of rubber was the subject of litigation in *Smith* v. *United States*, 149 Fed. 1022, T. D. 27746, affirming 143 Fed. 691, T. D. 27006. The rubber sponges there were held to be dutiable as manufactures of india rubber under paragraph 449, Tariff Act of 1897, and not as "sponges" under paragraph 82 of said act. The articles there in question were known as "Kleanwell sponges" and the court below held that Congress in establishing the rate of duty on sponges had in mind "the sponge fiber and its complicated framework, an aqueous product, and not the arbitrary designation afterward given to the manufacture in question."

In succeeding tariff acts Congress, in the sponge paragraphs, has not made any changes in language which would indicate any intent to extend the meaning of the provision to include any other than the natural sponges of marine animal origin. Therefore, so far as manufactured or synthetic sponges are concerned, this amounts to legislative sanction of judicial construction.

In the absence of proof of a commercial meaning different from the common meaning, the presumption is that they are the same.

Reference to the dictionaries shows the following meanings for "sponge":

The elastic porous mass of interlacing horny fibers which forms the internal skeleton of certain marine animals of low organization belonging to the phylum Porifera. (Webster's New International Dictionary, 1933.)

An animal with pores in the body-wall and without tentacles. (Funk & Wagnalls Dictionary, 1942.)

The other authorities are to like effect.

The only instance of a possible broader definition called to our attention by plaintiff is definition No. 7 in Webster's New International Dictionary, Second Edition, 1936, page 2434:

7. Anything used in place of a sponge; as, a rubber bath *sponge;* a cotton *sponge* for mopping up blood in a surgical operation.

Funk & Wagnalls Dictionary, 1942 Edition, gives a similar definition:

3. Some sponge-like implement or substance. (1) Any substance that in use serves the purpose of a sponge as an absorbent.

Van Nostrand's Scientific Encyclopedia (1938) contains the following under "sponge":

An animal of the phylum Porifera. In the vernacular the word refers to the sponge of commerce, which is the skeleton of a sponge from which the animal matter has been removed by maceration and washing. * * *.

* * * the manufacture of *substitutes* from rubber and cellulose is destined to reduce its [the sponge industry's] importance. Cellulose sponges, in particular, have the good qualities of natural sponges with greater uniformity. [Italics supplied.]

We do not consider the dictionary definition of the word "sponge" sufficiently comprehensive to include a manufacture of cellulose, even though it may resemble a natural sponge and may be used for the same purposes. It is not a "sponge" as that term is commonly understood, but would be more aptly described as a "substitute" for a sponge, or "anything used in place of a sponge." It seems to be clear that the provision for "sponges" in paragraph 1545 was intended by Congress to include only natural sponges, the product of marine animal origin.

We find these so-called cellulose sponges not to be within the provisions of paragraph 1545.

The protests are therefore overruled.

Judgment will be entered accordingly.