**No. 61834.**—Sears, Roebuck and Co. *v.* United States, protest 285929–K (Los Angeles).

Ford, Judge: The suit listed above challenges the action of the collector of customs in classifying certain imported merchandise as manufactures in chief value of rayon or other synthetic textile, not specially provided for, and levying duty thereon at the rate of 25 cents per pound, plus 35 per centum ad valorem, under paragraph 1312 of the Tariff Act of 1930, as modified by T. D. 51802 and the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739.

Plaintiff claims said merchandise to be properly dutiable at the rate of 20 per centum ad valorem under paragraph 1554 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, as supplemented by Presidential proclamation, 85 Treas. Dec. 138, T. D. 52476, as umbrellas, covered with material other than paper or lace, not embroidered or appliqued.

The pertinent parts of the involved paragraphs are as follows:

Paragraph 1312 of the Taiff Act of 1930, as modified by T. D. 51802 and T. D. 52739:

Manufactures of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding one inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for _____ 25 cents per lb. and 35% ad val.

Paragraph 1554 of the Tariff Act of 1930, as modified by T. D. 52373 and T. D. 52476:

Umbrellas, parasols, and sunshades, covered with material other than paper or lace, not embroidered or appliquéd_____ 20% ad val.

At the trial of the case, a sample of merchandise identical to that imported was admitted in evidence as exhibit 1. Exhibit 2 is a page from plaintiff's catalog, depicting an article described as a "New Picnic Parasol." Exhibit 3 is a page from a Sears' advertisement, depicting an item described as "Cotton Food Umbrella." Exhibit 4 is another Sears' advertisement, on which is depicted an item described as "Food Umbrellas." A page from the New York World-Telegram was marked exhibit 5 for identification only. Exhibit 6 is a catalog of Miles Kimball of Oskosh, Wis., on which is depicted an item described as "Picnic Parasols." This exhibit was admitted in evidence only as to the picture and only as to the name describing the item.

Plaintiff's first witness stated that he had been a purchaser for Sears, Roebuck and Co. for a period of 4 years and with the plaintiff company for a period of 21 years; that purchases and sales are made under his supervision; that the instant merchandise is referred to as a "cotton food umbrella"; that exhibit 1 is sold as a food umbrella; that "The purpose of this [exhibit 1] is to protect food from insects. It works on the principle of an umbrella. You place it over food outdoors and

indoors, and it would prevent insects from getting into the food"; that it is made and works on the principle of an umbrella; and "That is how it derives its name."

Plaintiff's second witness stated that she was employed by Sears, Roebuck and Co. and that she had purchased two of the items of merchandise here involved under the name of "Food umbrella"; that when she went to the store, she asked for a food umbrella and she received merchandise like exhibit 1; that she uses merchandise like exhibit 1 for covering food, particularly out of doors, picnics, and barbecues; that she received exhibit 6 through the mail from a small mail-order firm, whose list she was on for catalogs, and that the item depicted thereon as a food umbrella is the same as exhibit 1.

It was stipulated that the imported articles are in chief value of rayon and not covered with lace or paper.

Based upon this record, counsel for the plaintiff contends, in his brief filed herein, that the subject merchandise should be classified as umbrellas under paragraph 1554 of the Tariff Act of 1930, as modified, *supra*. In support of this contention, counsel quotes the following definition of "umbrella" from Webster's New International Dictionary:

1. A shade, screen, or guard carried in hand for sheltering one from rain, sun, etc. It is of silk, cotton, or other fabric, extended on strips of steel, or other elastic material, fastened to a rod or stick, usually by pivots or hinges so as to allow of being opened and closed with ease.

2. Anything serving to screen, shelter, or protect.

3. ` An umbrella-shaped structure or device.

Of, pertaining to, or like, an umbrella; used for umbrellas.

Funk & Wagnalls New Standard Dictionary (1956), at page 2597, is quoted as follows:

Umbrella—1. A canopy of silk, cotton, paper or other suitable fabric, supported on a radiating folding frame, and carried (usually) in the hand as a protection against the sun or rain. Small umbrellas, when used exclusively as a shelter from the sun, are called *sunshades or parasols*, and when used in all weathers, en-tout-cas.

Umbrellas, though seen in Egyptian and Assyrian sculptures, on Greek vases and figurines, and in medieval manuscripts, were not used in Europe as shelters from rain until the 18th century. In the East, as in Siam, they are emblems of royalty.

Counsel for the plaintiff also cites and quotes from Brown & Co. v. United States, 6 Ct. Cust. Appls. 415, T. D. 35977, in which the merchandise involved consisted of soya beans, cooked and salted; Nootka Packing Co. et al. v. United States, 22 C. C. P. A. (Customs) 464, T. D. 47464; Nozaki Bros. v. United States, 71 Treas. Dec. 790, T. D. 48974, wherein the merchandise consisted of mandarin oranges, packed in tins; United States v. L. A. Salomon & Bro., 22 C. C. P. A. (Customs) 490, T. D. 47483, in which the merchandise consisted of "fuller's earth"; Sheldon & Co. v. United States, 4 Ct. Cust. Appls. 42, T. D. 33265, in which the merchandise consisted of articles of paper, lithographically printed; and Klipstein v. United States, 4 Ct. Cust. Appls. 510, T. D. 33936, wherein the merchandise consisted of sulphonated indigo, as supporting his contention herein.

Adverting to the dictionary definitions, hereinbefore quoted, an examination of the subject merchandise, as represented by exhibit 1, demonstrates that it is not a shade, screen, or guard carried in hand for sheltering one from rain, sun, etc., or that the strips of steel, or other elastic material are fastened to a rod or stick, by pivots or hinges, so as to allow of being opened and closed with ease. Nor is the subject merchandise a canopy of suitable fabric, carried in the hand as a protection against the sun or rain. The fact that "Umbrellas, though seen in

Egyptian and Assyrian sculptures, on Greek vases and figurines, and in medieval manuscripts, were not used in Europe as shelters from rain until the 18th century" lends no support to the plaintiff's contention herein.

In *China & Japan Trading Co.* v. *United States*, 66 Fed. 733, the merchandise consisted of paper umbrellas. In disposing of the question there presented, as to whether or not the merchandise should be classified as umbrellas, the Circuit Court, Southern District of New York, held as follows:

As to the other branch of the case, it is undisputed that these large umbrellas are not used in the way in which ordinary umbrellas are used. They are not suitable for that purpose and are never so used. Their sole use is for the decoration of houses, halls and large buildings. This being so, it would be.illogical to classify them with the ordinary cloth umbrellas which are used to protect individuals from the sun and rain.

In *United States* v. *China & Japan Trading Co.*, 71 Fed. 864, the Circuit Court of Appeals, Second Circuit, affirmed the above-quoted decision by the Circuit Court, using the following language:

The so-called "umbrellas" are a many-colored, fantastically decorated article, imported from Japan and China, of huge size, the frame of which is covered with paper, the paper being the component material of chief value in the article. It resembles the ordinary umbrella, substantially as the miniature ones similarly made, and imported from the same countries, which are used by women for hairpins, resembles parasols. No one pretends that they are the umbrella of trade and commerce, and dealers in those articles do not keep them. They are called "umbrellas" for convenience, but they are not used or designed for use as such. They might as appropriately be called "rainbows."

The following is quoted from the brief of counsel for the defendant:

A study of the history of the umbrella paragraph since paragraph 471 of the Tariff Act of 1890, shows that in 1890 and in paragraph 361 of the Tariff Act of 1894 no special covering was required; paragraph 462 of the Tariff Act of 1897 provided for umbrellas covered with material other than paper; paragraph 478 of the Tariff Act of 1909 provided for umbrellas covered with material other than paper or lace; paragraph 383 of the Tariff Act of 1913 added the restriction "not embroidered or appliquéd"; no further change was made with respect to umbrellas in paragraphs 1456 and 1554 of the Tariff Acts of 1922 and 1930, respectively.

Following the above quotation, counsel for the defendant makes the following observation:

It is clear therefore that Congress, with knowledge of the decision in the *China & Japan Trading Co.* case, *supra*, never changed the meaning to be assigned to umbrellas for tariff purposes. It is therefore legislative sanction of judicial interpretation and binding upon this Court. That is especially true when it is considered that Congress has enacted 5 Tariff Acts since that case was decided without changing the meaning of "umbrellas". Under such circumstances, the presumption that Congress ratified the judicial construction is controlling in the absence of very compelling reasons to the contrary. *August Bentkamp* v. *United States*, 40 C. C. P. A. (Customs) 70, C. A. D. 500; *Werner G. Smith Co., Div. Archer Daniels Midland Co.* v. *United States*, 40 C. C. P. A. (Customs) 90, C. A. D. 503. * * *

Under the circumstances set out above, we are in accord with the contention of counsel for the defendant that the presumption that Congress ratified the judicial construction of the term "umbrellas" placed upon them in the *China & Japan Trading Co.* case, *supra*, is controlling, in the absence of compelling reasons to the contrary. Those compelling reasons we do not find in the record before us or in the authorities cited in the brief for the plaintiff. All claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly.