UNITED STATES *v.* HUDSON FORWARDING & SHIPPING CO.
(No. 2719)[1]

SHOE LEATHER—USE CHANGING SINCE PASSAGE OF ACT.

Alum-tanned sheep and goat leather, dressed and finished, practically all used for making shoes though not so used at the time of the enactment of the Tariff Act of 1922, is excluded from taxation as "leather  *  *  *  other than shoe leather" (par. 1431) and relegated to the free list provision of paragraph 1606 for "leather not specially provided for." See *Sheldon & Co. v. United States,* 4 Ct. Cust. Appls. 42, and *Klipstein v. United States,* 4 Ct. Cust. Appls. 510, holding that tariff acts operate *in futuro. Goldsmith Sons v. United States,* 13 Ct. Cust. Appls. 69, T. D. 40932, distinguished. Besides, goat and sheep leathers have long been used to make shoes; and the mere incident that a particular variety, now chiefly so used, was not formerly, can not deprive it of free entry. Neither the method of tanning—whether alum or chrome—nor the kind of use in the shoe—whether inside or outside—has any bearing.

United States Court of Customs Appeals, May 29, 1926

APPEAL from Board of United States General Appraisers, Abstract 50596

[Modified.]

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.
*Allan R. Brown* for appellees.

[Oral argument May 12, 1926, by Mr. Carter and Mr. Brown]

Before SMITH, BARBER, BLAND, and HATFIELD, Associate Judges; GRAHAM, Presiding Judge, participating in the decision by agreement of counsel

BARBER, Judge, delivered the opinion of the court:

Paragraph 1431 of the Tariff Act of 1922 contains a provision imposing duty upon

*  *  *  seal, sheep, goat, and calf leather, dressed and finished, other than shoe leather,  *  *  *

at the rate of 20 per centum ad valorem.

There is no *eo nomine* provision for shoe leather in the act, but paragraph 1606 gives free entry to

*  *  *  All leather not specially provided for;  *  *  *  leather, cut into shoe uppers, vamps, soles,  *  *  *  leather shoe laces, finished or unfinished.

Paragraph 1607 provides free entry for

Boots and shoes made wholly or in chief value of leather.

The only question in the case is whether or not certain alum-tanned sheep and goat leather, dressed and finished, now practically all used for making shoes, which leather, at the date of the enactment of the act, was not so used, is entitled to free entry under paragraph 1606.

It was classified and assessed by the collector under paragraph 1431.

The Board of General Appraisers held it to be entitled to free entry under paragraph 1606 as claimed in importer's protest.

The contention of the Government is, that because this leather was not used for making shoes at the time of the enactment of the present act, the fact that since that time it has come to be chiefly so used, does not warrant its admission free of duty.

In support of this contention it claims that at the date of the passage of the act leather used in making shoes was chrome or vegetable tanned, more especially the former, and, therefore, that this alum-tanned leather could not have been contemplated by Congress as within the exception for shoe leather in paragraph 1431.

The finding of the Board of General Appraisers in nowise supports the last-mentioned claim nor is it warranted by the evidence, especially that of the only witness called by the Government, which was not contradicted.

He testified in substance that goat and sheep skin leather had long been used for making shoes; that prior to 1890 practically all such leather was alum tanned; that since that time chrome tanning of such leather had largely superseded alum tanning; that a great deal of shoe leather is still alum tanned; "that nearly all the shoe leather used for the lining of white shoes is alum tanned, because chrome leather does not stay white.  As soon as the perspiration enters into the leather it changes;" that as a rule alum-tanned leathers are used for linings and chrome-tanned leather for the outside; that "the alum-tanned has a white surface and is easier to color.  That is the reason why they use on this leather alum tan instead of chrome."

The record and the exhibits show that the imported leather is used for the outside.

The language of paragraph 1431 implies that Congress knew that certain of the leathers therein provided for are used for shoe leather which, of course, means in making shoes, and it must have intended that leathers chiefly so used should not be classifiable thereunder. If it had intended to distinguish between leathers used for the inside or the outside of shoes or to have made the method of tanning them the test of classification, it could easily have used language conveying that intention.

The fact that the use of goat and sheep skin leather in the manufacture of shoes has been enlarged or extended since the enactment of the present act does not, in any wise, militate against the importer's contention.  The provisions of the act above referred to all tend to show that it was the purpose of Congress to give free entry to shoes in chief value of leather, as well as to the leather material used in their manufacture.  This intention is emphasized by the fact that in the same connection leather shoe laces are made nondutiable.

Carried to its full extent, the Government might about as well argue that shoes made wholly or in chief value of leather are not within paragraph 1607 unless they are such shoes as were known to commerce at the time the statute was enacted.

In *Sheldon & Co.* v. *United States*, 4 Ct. Cust. Appls. 42, this court, considering a somewhat analogous question, said:

> Tariff statutes are made for the future as well as for the present, and an applicable commercial designation used therein reaches out and embraces subsequent merchandise, the existence of which may not be known to commerce prior to the enactment of a given tariff law. (Pickhardt v. Merritt, 132 U. S. 252; Newman v. Arthur, 109 U. S. 132; United States v. Georgia Pulp & Paper Manufacturing Co., 3 Ct. Cust. Appls. 410; T. D. 32998.)

> If it be true that the commercial meaning of a word used in a tariff law may be applied to articles not then in existence, it seems logical, if in the lapse of time, the common meaning of a word first used in a statute concededly broadens, that the later statutes, which employ the word after its common meaning has in fact become extended, use the same in its broader sense.

See also *Klipstein* v. *United States*, 4 Ct. Cust. Appls. 510.

In the case at bar it is not necessary to rely altogether upon the the above rule because, as already appears, goat and sheep leathers have for a long time been used to make shoes, and the mere incident that some particular variety thereof, not formerly so generally used, has now been found adaptable and is chiefly used for that purpose, can not deprive it of the benefit of free entry.

*Goldsmith Sons* v. *United States*, 13 Ct. Cust. Appls. 69, T. D. 40932, relied upon by the Government, is not opposed to the conclusion we reach in this case, because there the importers contended that the use which *they* made of football leather removed it from an *eo nomine* provision therefor.

The Board of General Appraisers sustained the importer's protest with reference to all the items covered by the invoices in the case.

As we understand, counsel agree that as to certain items therein there is no evidence tending to support the protest and that the judgment of the board sustaining it as to such items should be reversed. They are as follows:

*Entry 370061*

Items 3 Dz lezards, 245 inchs, 1 at 2 _____ 491
3 Dz peaux velours, 182 pieds, 1 at 6.50 _____ 1184. 60
2 Dz 6 peaux fantaisies, 120 pieds, 1 at 4.75 _____ 571
3 Dz Velours Impression, 171 pieds, 3 at 6.50 _____ 1116. 30
77 1. " Agneaux Damier Clauc et noir 6 _____ 762
22 4. peaux Agneaux Damier ha vanc et noir 6.50 _____ 143
12 2. peaux Agneaux noir et rouge dore 10 _____ 120

*Entry 369253, Invoice 78328*

Items 512 pl. chevreaux jaspes divers.
1463 pl. agneaux    "       "
65 agneaux marbres 1.

As to the above items, the judgment of the Board of General Appraisers (now the United States Customs Court) is reversed.   In all other respects its judgment is *affirmed.*