UNITED STATES *v.* L. A. SALOMON & BRO. (No. 3805)[1]

---

[1] T. D. 47483.

United States Court of Customs and Patent Appeals, January 7, 1935

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General), for the United States.

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

*Lamb & Lerch* (*John G. Lerch* of counsel), *amici curiae*.

[Oral argument December 13, 1934, by Mr. Lawrence and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court.

A certain bleaching clay was imported at the port of New Orleans, La., and was classified for duty under paragraph 207, Tariff Act of 1930, at one-fourth of 1 cent per pound and 30 per centum ad valorem as "clays or earths artificially activated with acid or other material". The collector in his report referred to it as "fuller's earth", and stated that his action was in accordance with the chemist's analysis of the clay made by the "New York office". Said report of the chemist states: "An earth artificially activated with acid or other material. * * *"

The importer protested the classification of the merchandise and claimed it to be dutiable at $3.25 per ton or $1.50 per ton under said paragraph 207.

The United States Customs Court sustained said protest and the Government has appealed here from the judgment of said court.

Paragraph 207, Tariff Act of 1930, reads as follows:

PAR. 207. Clays or earths, unwrought and unmanufactured, including common blue clay and Gross-Almerode glass pot clay, not specially provided for, $1 per ton; wrought or manufactured, not specially provided for, $2 per ton; bentonite, unwrought and unmanufactured, $1.50 per ton; wrought or manufactured, $3.25 per ton; china clay or kaolin, $2.50 per ton; crude feldspar, $1 per ton; bauxite, crude, not refined or otherwise advanced in condition in any manner, $1 per ton; *fuller's earth*, unwrought and unmanufactured, $1.50 per ton; *wrought or manufactured, $3.25 per ton; clays or earths artificially activated with acid or other material, one-fourth of 1 cent per pound and 30 per centum ad valorem;* silica, crude, not specially provided for, $3.50 per ton; fluorspar, containing more than 97 per centum of calcium fluoride, $5.60 per ton; containing not more than 97 per centum of calcium fluoride, $8.40 per ton; sand containing 95 per centum or more of silica and not more than six-tenths of 1 per centum of oxide of iron and suitable for use in the manufacture of glass, $2 per ton.  (Italics ours.)

In this court it is not disputed that the imported clay has been artificially activated with acid.  The importer contends that activating a clay with acid is a process of manufacture, and that the imported merchandise has been clearly proven to be fuller's earth, and therefore falls within the specific term "fuller's earth  *  *  *  wrought or manufactured", and that it is more specifically provided for there than under the activated clays and earths provision under which it was assessed.

The Government contends: (1) That the merchandise has not been shown to be fuller's earth; (2) that if it be assumed that the importation is fuller's earth, wrought or manufactured, it has been artificially activated with acid or other material which compels assessment at the higher rate of duty under the artificially activated provision.

There is no substantial disagreement as to the characteristics of the merchandise, or as to its manner of production and treatment.  The following is shown by the testimony: The winning and extraction of the basic material, raw fuller's earth or fuller's clay, takes place in the district of Landshut and Mainburg in Neiderbayern, Germany.  The raw material is brought into a cleaning apparatus and there mixed and beaten up with water.  It is then let into a tub and there combined with mineral acids.  In this tub the oxides, which hinder the bleaching process, are boiled out.  The material is then pumped into filter presses where the acids are removed.  The clay is then dried and ground.  The processes are for the purpose of getting out undesirable portions, including oxides, which hinder the bleaching processes for which the clay is intended.  It is stated by the witnesses that the resulting product is not chemically changed by the acids, but that a chemical effect on the oxides is had and they are removed; that the result is a physical change in the resulting product brought about by the chemical action; that the acid process brings about the removal of the oxides.  The use of the acids on the clay unquestion-

ably artificially activates the same and makes the resulting product accomplish from four to eight times what the unactivated clay would accomplish in removing the color from oils. Fuller's earth gets its name from the fact that its principal use once was for fulling cloth and wool in cleansing these materials of grease.

As to the first contention of the Government, we think the weight of the evidence supports the finding of the trial court that the imported merchandise is fuller's earth which has been artificially activated with acid. In fact, as we see it, there is little, if any, evidence in the record nor is there any authority to the contrary.

A consideration of the context of the paragraph involved alone, we think, prompts the conclusion that the importation was properly assessed under and falls within the provision "clays or earths artificially activated with acid or other material, one-fourth of 1 cent per pound and 30 per centum ad valorem; * * *". Moreover, the correctness of this conclusion is made clearer by a consideration of the rather unusual and unique legislative history connected therewith.

In the hearings before the Committee on Ways and Means of the House of Representatives, vol. II, p. 1201, concerning paragraph 207, the committee was told by interested parties that: "In the tariff fuller's earth is classified as unwrought (or lump) and wrought (or powdered) fuller's earth". This was before any suggestion was made to Congress that activated clays or earths should have a separate tariff treatment.

When H. R. 2667, which later became the Tariff Act of 1930, passed the House, it contained, as paragraph 207, substantially the same provisions as were in the Tariff Act of 1922, and was as follows:

PAR. 207. Clays or earths, unwrought or unmanufactured, including common blue clay and Gross-Almerode glass pot clay, not specially provided for, $1 per ton; wrought or manufactured, not specially provided for, $2 per ton; china clay or kaolin, $2.50 per ton; crude feldspar, $1.50 per ton; bauxite, crude, not refined or otherwise advanced in condition in any manner, $1 per ton; fuller's earth, unwrought and unmanufactured, $1.50 per ton; wrought or manufactured, $3.25 per ton; silica, crude, not specially provided for, $4 per ton; silica, suitable for use as a pigment, not specially provided for, $7.50 per ton; fluorspar, $8.40 per ton.

American producers of activated clays, used for the same purpose as the activated fuller's earth at bar, appeared before the Committee on Finance of the United States Senate and urged a special provision for activated clays. The committee was informed that it was a new industry and that the product was principally used by producers and refiners in decolorizing, refining and otherwise purifying all kinds and grades of animal, vegetable and mineral oils, and that in the western part of the United States it had been discovered that the properties of a certain claylike mineral changed when given a certain chemical treatment, producing a material of unusual power in purifying such

oils. It was represented that the activated product was much stronger and more effective than either imported or domestic fuller's earth, and that fuller's earth was being imported from England and elsewhere. The committee was also informed as follows:

Fuller's earth is a natural absorbent and is not treated in any manner to increase its efficiency. In fact it does not respond to any known treatment. This should not then be confused with classification 53094, fuller's earth wrought or manufactured. This does not mean a chemical treatment but merely a washing and drying and classification as to fineness.

See Hearings, Tariff Act of 1929, vol. II, p. 161, *et seq.*

The Committee on Finance, in the committee print of H. R. 2667, inserted a note as follows:

Note: Earths artificially activated have been transferred from the provision for manufactured fuller's earth in this paragraph of the House bill—House and 1922 rate $3.25 per ton, and from Par. 214 (p. 52 of this print)—House and 1922 rate 30 per centum ad valorem.

The Committee on Finance added to paragraph 207, as it came from the House, the following language:

* * * earths artificially activated with acid or other material, $5 per ton; * * *.

When the bill passed the Senate and when it finally became a law, the said provision, inserted by the Committee on Finance, was changed to read as follows:

* * * clays or earths artificially activated with acid or other material, one-fourth of 1 cent per pound and 30 per centum ad valorem; * * *.

By the change made in the context of the bill, in view of the foregoing legislative history, we think that Congress intended that all clays and earths of whatever kind which were artificially activated by acid or other material should bear the higher rate of duty of one-fourth cent per pound and 30 per centum ad valorem, and that it never intended for fuller's earth which not only had been manufactured, by the processing above described, but which had also been artificially activated with acid, to be dutiable at the lower rate of $3.25 per ton.

It is suggested that since Congress must have been of the impression that fuller's earth could not be activated with acid or other material and was a naturally activated material, it could not have intended that any kind of fuller's earth should find classification under the artificially activated provision, and that Congress, legislating upon the information then at hand, believed that the two provisions for fuller's earth in the bill included fuller's earth in all forms. The importer, in its brief in this court, states:

With these facts before it, and particularly in the light of the fact that the domestic manufacturer requested that this activated clay or earth be given "an entirely new classification", it is obvious that Congress, in enacting the

provision for "clays or earths artificially activated with acid or other material" in paragraph 207, did not intend the provision to include *fuller's earth* in any shape or form, which in many tariff acts had been *eo nomine* provided for, both unmanufactured and manufactured, and was again so provided for in paragraph 207, tariff act of 1930.

The fact that German chemists have apparently perfected a process for treating fuller's earth, in which acid is used, which purifies it and increases its bleaching properties (which seems to be contrary to the information given to Congress, when it was considering the provision, that it could not be done), we submit does not alter the situation. * * *

If it be conceded that Congress did not have in mind that activated fuller's earth would be covered by the activated clays and earths provision, it is equally true that it could not have contemplated that an activated fuller's earth would be included within the provision for fuller's earth manufactured, since, according to the contentions of the importer, it was then fully informed that there was no such thing as an artificially activated fuller's earth. The context of the provision and the pertinent legislative history convince us that when Congress inserted the phrase in the paragraph under consideration "clays or earths artificially activated with acid or other material", it intended to include all clays and earths so treated, and that even though, at the time the provision was enacted, it was thought by the framers of the act that fuller's earth could not be artificially activated with acid, the higher duty provision should be held to include the activated fuller's earth at bar. Appellee seems to overlook the proposition that if its argument is sound that the importation should not be dutiable under the higher duty provision because Congress legislated with the thought that fuller's earth could not be activated, it would also apply to the contention of appellee that the merchandise was dutiable under the provision for fuller's earth wrought or manufactured. This line of reasoning would lead to the conclusion that the merchandise at bar could not find classification anywhere in paragraph 207 and that Congress, while attempting to protect the American producers of activated clays and earths, wholly failed in its purpose as far as the activated fuller's earth at bar is concerned.

It must be remembered that tariff acts are intended to bring within the purview of their provisions imported merchandise which is described therein, notwithstanding the fact that such merchandise, at the time of the law's enactment, was not known in our international commerce. It is well established that tariff statutes are made for the future as well as for the present. *United States* v. *Hudson Forwarding & Shipping Co.*, 14 Ct. Cust. Appls. 188, T. D. 41700, and cases therein cited. The Supreme Court of the United States, in *Newman* v. *Arthur*, 109 U. S. 132, said: .

The fact that at the date of the passage of the act goods of the kind in question had not been manufactured, cannot withdraw them from the class to which they

belong, as described in the statute, where, as in the present case, the language fairly and clearly includes them.

See *Pickhardt* v. *Merritt*, 132 U. S. 252.

It has been suggested that our conclusions herein amount, in effect, to a holding that the specific provision for fuller's earth, manufactured, is surplusage, and that it should not be presumed that Congress did a useless and purposeless thing in making such specific provision. A holding that activated fuller's earth is not dutiable under the provision for fuller's earth, manufactured, does not take away from that provision its intended purpose, and our holding here leaves ample field for the application of the provision. It is readily understandable why Congress intended that fuller's earth, unactivated, should have a separate dutiable status in the paragraph. That particular kind of clay was naturally activated, and although its bleaching power did not approach that of the artificially activated clays and earths, it nevertheless was competitive with such clays and earths, and, for that reason, if the intent of the legislature was fully carried out, it should bear a higher rate of duty than clays which were neither naturally or artificially activated.

This record clearly discloses a manufacturing process applied to fuller's earth which does not include artificial activation, and we think Congress has clearly distinguished in the paragraph between the two kinds of manufacturing processes. Therefore, the contention that the importation at bar is dutiable under the provision for fuller's earth, manufactured, merely because the process of activating with acid may be a manufacturing process, is without merit.

The judgment of the United States Customs Court is *reversed*.

GARRETT, J., dissents.