L. A. SALOMON & BRO. *v.* UNITED STATES (No. 4172) [1]

---

[1] C. A. D. 32.

United States Court of Customs and Patent Appeals, January 23, 1939

*Tilson, Stanley and McCuen* (*Dean Hill Stanley* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument December 8, 1938, by Mr. Dean Hill Stanley, Mr. John Q. Tilson, and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:[2]

This is an appeal from the judgment of the Third Division of the United States Customs Court which overruled an amended protest filed by the appellant against the action of the collector at the port of New York in levying duty on certain merchandise invoiced as "Fullers Earth" at the rate of $\frac{1}{4}$ of 1 cent per pound and 30 per centum ad valorem under paragraph 207, Tariff Act of 1930. The protest claimed the merchandise to be dutiable under the provisions of said paragraph 207 at only $1.50 per ton or $3.25 per ton as fuller's

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

earth, wrought or manufactured, and by an amendment to the protest it was alternatively claimed that said merchandise was dutiable under the provisions of paragraph 214 of said act at 30 per centum ad valorem as an earthy or mineral substance.

Paragraph 207 reads as follows:

PAR. 207. Clays or earths, unwrought and unmanufactured, including common blue clay and Gross-Almerode glass pot clay, not specially provided for, $1 per ton; wrought or manufactured, not specially provided for, $2 per ton; bentonite, unwrought and unmanufactured, $1.50 per ton; wrought or manufactured, $3.25 per ton; china clay or kaolin, $2.50 per ton; crude feldspar, $1 per ton; bauxite, crude, not refined or otherwise advanced in condition in any manner, $1 per ton; *fuller's earth*, unwrought and unmanufactured, $1.50 per ton; *wrought or manufactured*, $3.25 per ton; *clays or earths artificially activated with acid or other material*, one-fourth of 1 cent per pound and 30 per centum ad valorem; silica, crude, not specially provided for, $3.50 per ton; fluorspar, containing more than 97 per centum of calcium fluoride, $5.60 per ton; containing not more than 97 per centum of calcium fluoride, $8.40 per ton; sand containing 95 per centum or more of silica and not more than six-tenths of 1 per centum of oxide of iron and suitable for use in the manufacture of glass, $2 per ton. [Italics ours.]

The identical issue involved in this case was decided by this court in *United States* v. *L. A. Salomon & Bro.*, 22 C. C. P. A. (Customs) 490, T. D. 47483. In the instant case, the parties stipulated that the imported material was similar in all material respects to the material which was before the court in the *Salomon* case, *supra*. The testimony, in the former case, of Friedrich Mauch and Dr. Hans Staelin, taken in Germany by deposition upon interrogatories and cross interrogatories, was stipulated into the record as a part of the instant record. Appellant in addition introduced the testimony of six witnesses and the Government that of seven witnesses.

The imported material is made from raw fuller's earth or clay which is found in the district of Landshut and Mainburg in Neiderbayern, Germany. The earth is taken from the surface of the ground and placed in a cleaning apparatus, mixed and beaten up with water. It is then combined with a mineral acid, usually hydrochloric acid. The acid and certain oxides in the earth which are undesirable are removed. After the undesirable impurities have been removed, the clay is dried and ground. The process through which the raw earth is taken, according to the contentions of appellant (and there is an abundance of testimony to support the contentions) is for the purpose of removing certain oxides and impurities in the fuller's earth which will not absorb, to any great extent, objectionable color elements in oils. In order to remove objectionable coloring matter from oils, both mineral and vegetable, it is necessary to treat the same with fuller's earth or certain kinds of treated clays or earths, and it is the usual commercial practice to employ the contact system which involves mixing directly with the oil a very substantial quantity of

such clay. If the pebbles, sand, certain oxides, and other impurities have not been removed, the active absorbing elements in the clay or earth are so limited that the result is only about one-fourth as good and effective as when the material has been treated as has the importation at bar by the above process. The imported material is sold under the trade-name "Tonsil."

In the former case the Government made very little contention that the original material from which the imported "Tonsil" was made was not fuller's earth. This court, upon the record, definitely held that the imported material before it had been processed was fuller's earth. The Government in the instant case has introduced the testimony of several witnesses in an attempt to show that the basic material, a sample of which (Exhibit 3) is in evidence, was not fuller's earth but was a bentonitic clay. It is the position of the Government that the basic material was not fuller's earth chiefly for the reason, stated by some of the witnesses, that the bleaching efficiency of fuller's earth cannot be increased by acid treatment. These witnesses compared the German basic material with certain basic material in this country which they took as their standard and which they stated was fuller's earth. Importer's witnesses were equally emphatic that the German basic material was fuller's earth, and was so regarded and styled in Germany and here.

We see no reason for a lengthy discussion of this issue because in view of our conclusion it makes little, if any, difference which contention in this particular is supported by the record. In passing it may be said that merchandise like that at bar was, in 1931, by the Third Division of the trial court in the case of *L. A. Salomon & Bro.* v. *United States*, T. D. 45360, 60 Treas. Dec. 1170, definitely held to be fuller's earth, wrought or manufactured (under the Tariff Act of 1922) and the same division took the same view in its decision in the first *Salomon & Bro.* case which was appealed here. In the instant case we find nothing in the decision of the trial court which indicates that it was impressed in the least with the Government's contention that the basic material from which "Tonsil" was made was not fuller's earth. The Government urges here that the record discloses that the basic material is not fuller's earth but that it is a clay which has been artificially activated and is that particular character of clay which Congress had in mind in the enactment of the provision "clays or earths artificially activated with acid or other material." With the exception of the particulars above stated the Government's contentions in this case are the same as those which were urged before this court in the argument of the issue involved in our prior decision.

The contentions of the importer in the instant case are a repetition of the contentions of the same importer, though represented by different counsel, in the argument of the previous case. It is the posi-

tion of the importer that it has here furnished a fuller record which justifies and requires a reexamination and reconsideration of the identical issue decided in our prior decision and it contends here, as the same importer contended in the previous case, that the imported earthy substance is clearly shown to be a fuller's earth which has been wrought and manufactured and that it is not the character of clay or earth that Congress had in mind when it enacted the activated clay and earth provision in controversy. Importer contends that the instant merchandise has not been activated; that it has merely been purified; and that clays which are naturally active are not activated by the acid treatment. Importer stresses at great length here, as it did in the previous case, that the Senate committee which inserted the controverted provision by amendment to the House bill was definitely told that fuller's earth (which includes the basic material from which the imported article was made), could not be activated by any acid treatment, and that it was the purpose of Congress, by inserting the amendment, to reach clays which in a natural state had little, if any, absorbing activity but which, when treated by the process above stated, became highly active as an absorbent in the purification and decolorizing of mineral and vegetable oils.

In our decision in the previous case this court, basing its holding upon the premise that the imported material was fuller's earth which had been acid treated, and after reviewing the legislative history of the provision, held in effect that it was shown in that record that fuller's earth could be and was wrought and manufactured without the use of acids and that a holding that the activated clay and earth provision applied to merchandise like that involved did not invade the provision for fuller's earth wrought or manufactured, to the extent that would render the same surplus and nugatory, and that it was the intent of Congress to require that any clay or earth which had been artificially activated with acid or other material should bear the higher rate of duty in order that the new industry then coming into existence would be protected from the cheaply produced similar clay or earth products imported from foreign countries.

Every issue presented here was decided in the prior decision. Appellant's main contention there and main contention here is that since Congress was told that fuller's earth could not be activated, it could not have had in mind, when it enacted the controverted activated clay provision, that the German fuller's earth at bar would be dutiable thereunder. In answering that contention in the prior case we said:

If it be conceded that Congress did not have in mind that activated fuller's earth would be covered by the activated clays and earths provision, it is equally true that it could not have contemplated that an activated fuller's earth would be included within the provision for fuller's earth manufactured, since, according

to the contentions of the importer, it was then fully informed that there was no such thing as an artificially activated fuller's earth. The context of the provision and the pertinent legislative history convince us that when Congress inserted the phrase in the paragraph under consideration "clays or earths artificially activated with acid or other material", it intended to include all clays and earths so treated, and that even though, at the time the provision was enacted, it was thought by the framers of the act that fuller's earth could not be artificially activated with acid, the higher duty provision should be held to include the activated fuller's earth at bar. Appellee seems to overlook the proposition that if its argument is sound that the importation should not be dutiable under the higher duty provision because Congress legislated with the thought that fuller's earth could not be activated, it would also apply to the contention of appellee that the merchandise was dutiable under the provision for fuller's earth wrought or manufactured. This line of reasoning would lead to the conclusion that the merchandise at bar could not find classification anywhere in paragraph 207 and that Congress, while attempting to protect the American producers of activated clays and earths, wholly failed in its purpose as far as the activated fuller's earth at bar is concerned.

It must be remembered that tariff acts are intended to bring within the purview of their provisions imported merchandise which is described therein, notwithstanding the fact that such merchandise, at the time of the law's enactment, was not known in our international commerce. It is well established that tariff statutes are made for the future as well as for the present. *United States* v. *Hudson Forwarding & Shipping Co.*, 14 Ct. Cust. Appls. 188, T. D. 41700, and cases therein cited. The Supreme Court of the United States, in *Newman* v. *Arthur*, 109 U. S. 132, said:

The fact that at the date of the passage of the act goods of the kind in question had not been manufactured, cannot withdraw them from the class to which they belong, as described in the statute, where, as in the present case, the language fairly and clearly includes them.

Without discussing the question at length, it seems sufficient to say that when appellant attempts to argue its importation out of the second controverted provision, the same reasoning would require the conclusion that it does not properly come under the first. More tersely stated, if Congress did not believe fuller's earth could be acid treated, it certainly did not have in mind this character of material when it employed the term "fuller's earth * * * wrought or manufactured." It seems probable that appellant, realizing the force of this viewpoint, thought it wise to amend its protest in order that if it were held that Congress could not have intended this material to be dutiable under either of the disputed provisions, it would be held dutiable as an earthy or mineral substance under paragraph 214.

As to appellant's contention that the imported fuller's earth at bar which has been acid treated is not "artificially activated with acid," we think the instant record, the context of the provision, and the legislative history of the same do not require or justify such a conclusion. Congress was told that clays could be activated by an acid treatment. It was explained there that the impurities were thus removed. The instant material, after the acid treatment, according to the record, is four times as active in its absorbing qualities as it

was prior to receiving the acid treatment. Witnesses on both sides referred to the acid treatment as giving the clay additional absorbing "activity." We think it is far-fetched to argue that there must be a change of structure in the basic material which the acids do not remove in order for the resulting product to be regarded as activated clay.

It seems to us that a conclusion that the acid-treated earth or clay at bar is not provided for in any of the provisions of the very comprehensive paragraph 207 would be wholly unjustified. Is it logical to conclude that it was the intent of the legislature to permit any acid-activated clay or earth to be imported at the lower rate of duty if it came in direct competition with the domestic product which it was trying to protect? In our former decision we pointed out that tariff acts are not only enacted with the intent of covering imported merchandise then known and handled in the channels of commerce, but are also made for the future and that if goods not in existence at the time of the enactment are subsequently imported and fall clearly within the language employed in the act, they should be regarded as subject to such provision. Authorities on this phase of the case were there cited and quoted from and need no repetition here.

Appellant very earnestly contends that if the merchandise is described in both provisions and even if it be held that the imported merchandise is a clay and earth activated in accordance with the terms of the provision and is of the kind and character described therein, it nevertheless is more definitely and specifically provided for as fuller's earth, wrought or manufactured, and that the rule of relative specificity requires that it find classification under the first provision.

In *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078, this court was confronted with a situation somewhat similar to that presented by appellant's contention last referred to. We there explained that the rule of relative specificity was not always a controlling one. The language used there applies so aptly to the contentions of appellant relative to the specificity of the two provisions here under consideration that we quote somewhat at length therefrom:

If it were conceded that the importation is a scientific apparatus within the meaning of paragraph 360 and if it were also conceded that the provision in paragraph 360 as applied to the merchandise involved is more specific than the provision for "all optical instruments, frames and mountings therefor," in paragraph 228 (b), we nevertheless would conclude that the particular merchandise at bar should be held dutiable under the latter provision. If we were called upon to pass on the question of the relative specificity of the two competing provisions, we, no doubt, would be confronted with considerable difficulty. It seems obvious, however, that the degree of difference in specificity between the two provi-

sions, if any exists, is not great, certainly not great enough to be controlling under the circumstances with which we are confronted.

The rule of relative specificity is a rule of construction employed by the courts in trying to arrive at legislative intent. Like most rules of construction it is frequently found in conflict with other rules of construction and at times must yield in controlling influence. *Downing & Co.* v. *United States*, 6 Ct. Cust. Appls. 447, T. D. 35984. All rules of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rule. The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent. *L. R. Markell et al.* v. *United States*, 16 Ct. Cust. Appls. 518, T. D. 43239; *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732; *Cassard Romano Co., David A. Haagens* v. *United States*, 19 C. C. P. A. (Customs) 191, T. D. 45294; *Proctor & Gamble Mfg. Co.* v. *United States*, 19 C. C. P. A. (Customs) 415, T. D. 45578.

We are not unmindful of the importance in customs jurisprudence that has attached to the well-settled rule relative to relative specificity. Throughout the entire history of customs litigation it has been a potent instrument used with great frequency by the courts in determining the legislative intent. The fact that it has so seldom been forced to yield its controlling effect emphasizes the weight which the courts have given to it, but like all the rules of construction it has its limitations.

If it were conceded in the instant case that "fuller's earth * * * wrought or manufactured" is more specific in its application to the imported merchandise than the provision for "clays or earths artificially activated with acid or other material," this fact would not justify a holding that Congress did not intend by the enactment of the latter provision to invade the former and require all clays and earths, including fuller's earth, which had been wrought or manufactured by certain processes and additionally manufactured by acid treatment to find classification in the second provision.

Therefore, for reasons stated in the former opinion and for additional reasons which we have stated here, we conclude that Congress in the enactment of paragraph 207 intended to require that all earths and clays artificially activated by acid or other material should not be subject to the same rate of duty as fuller's earth which had been wrought or manufactured by processes other than the acid treatment. It seems to us that the context of the paragraph and the legislative history thereof, which history we do not need to state fully or discuss here, compel the conclusion that the collector's classification and assessment was a proper compliance with the legislative will and that the trial court in overruling the protest committed no error, and its judgment here appealed from is *affirmed*.

GARRETT, Presiding Judge, specially concurring: In the case of *United States* v. *L. A. Salomon & Bro.*, 22 C. C. P. A. (Customs) 490, T. D. 47483, I felt constrained to dissent from the conclusion of the majority. I recognize the fact the majority decision there became the law and as such feel myself bound by it, and I agree with my associates that nothing has been presented here which would justify a conclusion different from the one there reached.