PARAMOUNT IMPORT EXPORT CO., PARAMOUNT IMPORT CO., INC. *v.* UNITED STATES (No. 4918) [1]

United States Court of Customs and Patent Appeals, March 14, 1958

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Joseph Schwartz* of counsel) for appellants.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel), for the United States.

[Oral argument December 4, 1957, by Mr. Honey and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, C. D. 1849, overruling the importers' protests

---

[1] C. A. D. 677.

and sustaining the collector's classification of the imported merchandise as partly finished shell buttons, dutiable under paragraph 1509 of the Tariff Act of 1930 at 1¾ cents per line per gross, plus 25 per centum ad valorem. The importers asserted in the protests, and contend here, that classification should have been under paragraph 1538 of the Act as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, as manufactures of shell or as shell manufactured, at 17½ per centum ad valorem.

The pertinent portions of the competing paragraphs read:

Tariff Act of 1930

Par. 1509. * * *; buttons of pearl or shell, finished or partly finished, 1¾ cents per line per gross; * * *; and, in addition thereto, on all the foregoing, 25 per centum ad valorem: *Provided:* That the term "line" as used in this paragraph and paragraph 1510 shall mean the line button measure of one-fortieth of one inch.

Paragraph 1538, as modified, *supra*:

| Tariff Act of 1930 paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1538 | Manufactures of mother-of-pearl or shell, or of which these substances or either of them is the component material of chief value, not specially provided for; and shells and pieces of shells engraved, cut, ornamented, or otherwise manufactured_____ | 17½ ad val. |

The merchandise consists of disks, which are also referred to as blanks, ranging in diameter from 22 line size to 34 line size. The disks are made by cutting Trocas shells into various circular sizes, grinding both sides to make them even and reduce them to the desired thickness, then polishing both sides.

Testimony was presented by both parties as to the use to which the disks are put, or for which they are suitable. While the testimony is conflicting in some respects, we think it satisfactorily establishes that the instant disks, in their imported condition, were not suitable for making buttons having two or more holes, primarily because of the risk of shattering the disks in the process of drilling such holes, and the consequent loss of labor previously expended in the grinding and polishing processes. Although there is testimony that the disks may be, and are to a considerable extent, used for making "shank buttons" involving the partial or complete drilling of but one hole, they are also used in substantial quantities as ornamental inlays and for other purposes in the jewelry industry, as well as for elevator pushbuttons and buttons on the keys of musical instruments.

This particular importation was not sold to button manufacturers but to various jewelry manufacturers.

In urging that the *eo nomine* provision should prevail, the Government directs attention to Webster's New International Dictionary, 2nd Ed., 1956, which provides eleven different classifications for the noun "button." Included are pushbuttons and the keys of musical instruments, but also included are the following:

5. (a) One who is a decoy (b) Point of the chin.
6. A small mass or globule of metal remaining after fusion at the bottom of a crucible or cupel.
11. A leather boss on an oar to keep it from slipping through the rowlock.

We have given due weight to the Government's contention, but feel that a more satisfactory source for a determination of the word would best be found in a judicial pronouncement in which buttons were involved in a tariff sense. Although neither party cited such a situation, we are taking the liberty of quoting the following excerpt from the decision in *Blumenthal & Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 327, T. D. 34529:

The ordinary meaning of the word "button" is a knob, globe, or disk of some substance having a shank or perforation or other means by which it may be attached to one part of a garment and used to join it to another part by passing through a buttonhole, or it may be used for ornamentation wholly. There are extended meanings commonly applied to the word which are not applicable here. * * *

Pushbuttons and the keys of musical instruments obviously are not used for securing parts of garments together, nor are they used for ornamentation on garments. Consequently, we do not think they are "buttons" in a tariff sense within the meaning of paragraph 1509.

Moreover, as above noted, the testimony shows that the disks have substantial commercial uses other than in making buttons, even if pushbuttons and musical instrument keys were to be regarded as buttons in a tariff sense.

It was the opinion of the Customs Court that, since the disks are *capable* of being manufactured into buttons, they are to be regarded as partly finished buttons within the meaning of paragraph 1509 of the 1930 Tariff Act, and that such *eo nomine* provision takes precedence over the more general provision of "manufactures of shell" or "shell manufactured" in paragraph 1538. The fact that the testimony shows that the disks were frequently used for other purposes, and that the instant shipment was so used, was not considered sufficient to remove them from classification under paragraph 1509.

It is clear that the provision for "buttons of pearl or shell, partly finished," in paragraph 1509 is more specific than that for "Manufactures of mother-of-pearl or shell" in paragraph 1538 and, accordingly, if the merchandise satisfies the former provision, it is properly

classifiable under paragraph 1509, as found by the Customs Court. Appellants contend, however, that the merchandise is not partly finished buttons for the reason that, at the time of importation, it was *not dedicated* to such use.

. The Customs Court made no express finding that the merchandise was dedicated to use in making buttons, and was apparently of the opinion that such dedication was unnecessary in view of the *eo nomine* provision in paragraph 1509 for partly finished buttons. The court, relying on *Worthington* v. *Robbins,* 139 U. S. 334, stated:

> If imported articles bear marks of special adaptation for use in making buttons, and such use is substantial and long continued, then the fact that the articles could be used, and in this case actually were used, to make jewelry, has no relation to the condition of the articles, as imported, but only to what the importer afterwards did with them.

The question whether a tariff provision for unfinished, named articles requires dedication to use as such articles was fully discussed in *Nyman & Schultz* v. *United States,* 14 Ct. Cust. Appls. 432, T. D. 42060. In its decision, after citing *Snow's United States Sample Express Co.* v. *United States,* 8 Ct. Cust. Appls. 17, T. D. 37161; *United States* v. *American Bead Co. et al.,* 9 Ct. Cust. Appls. 27, T. D. 37873; *United States* v. *National Importing Co. (Inc.) et al.,* 12 Ct. Cust. Appls. 186, T. D. 40169; and *Rogers* v. *United States,* 14 Ct. Cust. Appls. 51, T. D. 41552, the court said:

> While some of the cases cited in the opinion below might have some bearing on the issues involved here, we think the expressions of this court in the four cases last cited have established the rule in this kind of case to be substantially that as was laid down in the *United States* v. *American Bead Co.* case, *supra,* that is to say, "an article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture." While this rule was applied in defining "parts," it applied to determining the application of the word "unfinished." *United States* v. *National Importing Co., supra.*

· Similarly, in considering whether merchandise should be classified as scissors, unfinished, in *Redden & Martin* v. *United States,* 5 Ct. Cust. Appls. 485, T. D. 35147, the court said:

> The decisive factor in the present case is found in the circumstance that the articles in question were brought to their present condition as part of the process of manufacturing them into finished scissors blades, and that this process has so far advanced in their case that the articles possess the elementary form and substance of scissors blades and *are unsuitable commercially for any other use.* * * * (Italics ours.)

In *United States* v. *Cartier (Inc.),* 15 Ct. Cust. Appls. 334, T. D. 42493, the meaning of a provision for "jewelry, commonly or commer-

cially so known, finished or unfinished" was considered and it was said that:

Certainly a part of jewelry, such as that involved in this case, which has been so far advanced as to unmistakably indicate the particular article of jewelry which it will become when completed, and *which is commercially unfitted in its condition as imported for the making of anything else, is unfinished jewelry.* (Italics ours.)

Conclusions similar to those set forth in the foregoing decisions were reached by this court in the recent cases of *United States* v. *F. B. Vandegrift & Co., Inc.,* 44 C. C. P. A. (Customs) 15, C. A. D. 628, and *National Carloading Corp.* v. *United States,* 44 C. C. P. A. (Customs) 77, C. A. D. 640.

The case of *Worthington* v. *Robbins,* 139 U. S. 337, relied on by the Customs Court held, in effect, that articles are dedicated to a particular use when they "bear marks of special adaptation" for such use. In our opinion the term "special adaptation" requires that something must have been done to the article which, so far as substantial commercial, rather than fugitive use is concerned, limits it to a particular use. Work done on an article which serves equally well to fit it for any one of several ultimate commercial uses does not, as we understand the decision, dedicate it to any one of those uses. Accordingly, *Worthington* v. *Robbins* does not support the proposition that an article is an unfinished button merely because it bears the marks of work which adapts it to being made into a button if, at the same time, such work equally adapts it for one or more other substantial commercial uses.

The Government relies heavily on *Henry Pollack (Inc.)* v. *United States,* 19 C. C. P. A. (Customs) 215, T. D. 46324, in which certain merchandise was held to be women's hats partly manufactured, notwithstanding the fact that some of it was used as trimmings and artificial flowers. In that case, however, the court pointed out that, on the record there made, the merchandise was "designed, manufactured and shaped for the purpose of making hats and was dedicated to that use at the time of importation," and held that the diversion of a portion of it to other uses should not alter the classification. Here, on the other hand, there is nothing to establish that the disks were ever dedicated to use as buttons. They were apparently made for a variety of uses and, as noted, the particular shipment here was actually sold to jewelers. We think, therefore, that the instant case is clearly distinguishable from the *Pollack* case.

There is no definite evidence as to the exact proportions of disks or blanks such as those here which are used for each of the various purposes mentioned in the testimony. It is quite clear, however, that very substantial quantities are used commercially for purposes other than the making of buttons, and that such uses are by no

means accidental or fugitive. Accordingly, in view of the authorities cited, we are of the opinion the merchandise, at the time of importation, was not dedicated to use in the making of buttons and, therefore, cannot properly be classified as partly finished buttons. It should, accordingly, have been classified under paragraph 1538 as manufactures of shell not specially provided for.

It is urged by the Government that the meaning of the term "button" must be determined as of 1930, when the Tariff Act was enacted; that there is no evidence of use of shell blanks prior to that date for making anything other than buttons; and that the evidence as to subsequent use of such blanks for other purposes should be given no weight. However, the basic issue here is whether the blanks are dedicated to use in making buttons. Whether such a dedication has been effected depends upon their condition and potential uses at the time of importation. *United States* v. *Hudson Forwarding & Shipping Co.*, 14 Ct. Cust. Appls. 188, T. D. 41700, and *W. J. Lake & Co., Inc. et al.* v. *United States*, 27 C. C. P. A. (Customs) 247, C. A. D. 94.

The fact that the merchandise is described by "line" measurements in the invoices, and that a "line" is a button measurement does not, in our opinion, make the merchandise buttons, finished or unfinished. In view of its general similarity to buttons in shape and size, it seems natural that button terminology should be used in connection with it, but such terminology has no material bearing on the question of dedication, which is controlling here.

That questions involving potential uses, condition at time of importation, and dedication, are most difficult to always determine with certainty, is evidenced by the relatively large number of divided decisions. Such a decision was cited by the Customs Court in the instant case and has been carefully considered by us. However, under the particular facts here, we think that to affirm the judgment appealed from would be inconsistent with the precedents we have cited.

The judgment of the United States Customs Court is *reversed*.

JACKSON, J., Retired, recalled to participate was present at the hearing of this appeal but did not participate in the decision.