UNITED STATES *v.* BUFFALO SOCIETY OF NATURAL SCIENCES ET AL.
(No. 2747)[1]

United States Court of Customs Appeals, April 4, 1927

*Charles D. Lawrence,* Assistant Attorney General (*Reuben Wilson,* special attorney, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument December 14, 1926, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Buffalo Society of Natural Sciences made three importations of articles which were entered as anatomical, botanical, and zoological models. These were classified by the collector in each instance as manufactures of plaster of Paris, under paragraph 1440 of the Tariff Act of 1922, at 35 per centum ad valorem. The importer protested, claiming the goods to be free of duty under paragraph 1530, 1665, or 1658, or in the alternative, as unenumerated articles under paragraph 1459, as manufactures of papier-mâché under paragraph 1303, or as manufactures of wax under paragraph 1438 of said act.

Said paragraphs 1440 and 1530 are as follows:

PAR. 1440. Manufactures of ivory or vegetable ivory, or of which either of these substances is the component material of chief value, not specially provided for; manufactures of mother-of-pearl, shell, plaster of Paris, and india rubber known as "hard rubber," or of which these substances or any of them is the component material of chief value, not specially provided for; and shells and

---

1 T. D. 42128.

pieces of shells engraved, cut, ornamented, or otherwise manufactured, 35 per centum ad valorem.

PAR. 1530. Any society or institution incorporated or established solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts, or any college, academy, school, or seminary of learning in the United States, or any State or public library, may import free of duty any book, map, music, engraving, photograph, etching, lithographic print, or chart, for its own use or for the encouragement of the fine arts, and not for sale, under such rules and regulations as the Secretary of the Treasury may prescribe.

The goods imported are represented by four samples. The first, Exhibit 1, consists of a representation of a pansy, *viola tricolor*, in colors and about 17 inches in height, mounted on a wooden base, from which it can be detached, made, as shown by the testimony, of papier-mâché and wood; accompanying it is a separate representation of the plant bisected, in order to show its organs of generation, which organs are attached to it by removable metal pins. The second sample, Exhibit 2, is a representation of certain parts of *amphioxux lanceolatus*, a simple form of animal vertebrate life. This is about 20 inches in length and represents a complete longitudinal cross section of the animal with the viscera and vascular and nervous systems in position. It is fastened to a wooden mounting, and is made of glue, plaster, and papier-mâché. Exhibit 3 represents a moss filament bisected longitudinally, with parts in position, is about 16 inches in length, has a steel pin at the base for mounting, and is made of wire, plaster, glue, and papier-mâché. Exhibit 4 consists of two representations of certain parts of the bodily structure of a leech, *Hirudo officinalis*, each representation being about 21 inches in length, each with a portion of the top of the body removed, and each showing certain portions of the viscera and vascular and nervous systems in position. These, with a separate representation of the head of the creature, are fastened solidly to a wooden mounting and are made of the same materials as Exhibit 3. All the samples, except Exhibit 3, bear labels giving the common and scientific names of the objects. Each of the four exhibits, in connection with the testimony, fully establishes that each shows the natural object it represents in a size many times enlarged.

The uncontradicted testimony shows that the goods were imported by an institution incorporated solely for educational purposes, and that said goods were imported for the use of said institution, and not for sale, and were imported under such rules and regulations as had been prescribed by the Secretary of the Treasury with reference thereto, thus bringing the goods within the letter and meaning of paragraph 1530 of the statute, if they be named specifically therein. The testimony also shows that the imported goods are used for the purpose of teaching and instructing the children of the public schools

of Buffalo and that as many as 3,000 of said school children come in contact with them annually.

The court below sustained the protest under said paragraph 1530 and from the judgment rendered thereon the Government appeals.

It will be conceded that if these importations are to come within the language of said paragraph 1530, it will be because they are included within the meaning of the word "chart" as found therein. On consideration of the authorities and the manifest intent of this paragraph, we are of opinion that they are so included.

In Abstract 13758, 12 Treas. Dec. 633, certain sheets of cardboard cut out into the form of the human body and the various organs thereof, colored as in life and hinged in place, so that the various anatomical details of the body might be seen, were held to be charts under paragraph 403 of the tariff act of July 24, 1897, which contained practically the same language as said paragraph 1530. Under the same act, in Abstract 22163, 18 Treas. Dec. 302, the Board of General Appraisers had before it sheets of cardboard, printed and cut out and having superimposed thereon metal parts, all to illustrate the working of a high-tension magneto. It was designed for the use of students. Although in chief value of metal, it was held to be a chart. Again, in Abstract 28988, 22 Treas. Dec. 1132, lithographically printed paper, arranged to represent the mechanical features of a locomotive or automobile, with superimposed flaps, were held to be charts under paragraph 416 of the tariff act of August 5, 1909, which carried substantially the same language as in said paragraph 1530.

This court, in *Sheldon & Co.* v. *United States*, 4 Ct. Cust. Appls. 42, reviewed the decision of the Board of General Appraisers in the case last above cited. The court, speaking through Barber, J., reviewed the authorities generally and affirmed the decision of the board. In doing so, it was said:

A half century or more ago the word "maps" related to representations of land surfaces and "charts" to water surfaces. The charts were for use by mariners and designed among other things to guide them in their trips in waters to them unfamiliar, or, if familiar, to aid them in keeping to a desired or safe course. It is an apt enlargement and extension of this early meaning of the word to allow it to now include articles like those at bar, which in form are somewhat similar to the early charts and seem to be adapted either to educate the unskilled as to the construction of the mechanical devices to which they relate or to assist those skilled therein in the use thereof.

Later, in T. D. 38679, 39 Treas. Dec. 206, anatomical charts precisely similar to those referred to in Abstract 13758, *supra*, were claimed to be dutiable under paragraph 325 of the tariff act of October 3, 1913, and not under paragraph 329 thereof as charts. The board there calls attention to the fact that said paragraph 325 was substantially a reenactment of said paragraph 416 of the tariff act of August 5, 1909, and that the Congress must be presumed to have

legislated, knowing and concurring in the former decisions of the courts on that subject matter, and held them to be charts.

In Abstract 50368, 48 Treas. Dec. 737, certain pasteboard pads, having superimposed thereon representations of twigs and sprigs, intended for the instruction of nurserymen in budding and grafting trees, were referred to and considered by the court as propagation charts. While this case can not be considered as authority, inasmuch as the question here involved was not raised therein, it is yet useful as showing the general tendency toward the broadening of the meaning of the word "chart" as it appears in said paragraph 1530.

Paragraph 1530 obviously was intended to extend the benefits and advantages of free entry to goods intended, *inter alia*, for educational purposes. In so doing, the Congress had in mind the public welfare. It is our duty to give this paragraph a liberal construction in order to further that purpose. We think the word "chart" may well be considered, in the sense in which it is used in paragraph 1530, to include all such importations as the ones before us in the case at bar. The very respectable line of authority hereinbefore cited leads to that conclusion and we must assume that the Congress had this in mind when it enacted paragraph 1530, in substantially the same language which had appeared in preceding statutes and which had received judicial construction.

The judgment of the court below is *affirmed*.