No. 60546.—J. E. Bernard & Company, Inc. v. United States, protests 250414–K/6590 and 254997–K/6810 (Chicago).

OLIVER, Chief Judge: These two protests relate to human skeletons made of plastic, which were assessed at 20 per centum ad valorem and classified, by similitude, as articles, not specially provided for, composed in chief value of cellulose acetate, under paragraph 31 (a) (2) of the Tariff Act of 1930, as modified by T. D. 51802, by virtue of the similitude clause in paragraph 1559 of the Tariff Act of 1930, either as originally enacted or as modified by section 201 of the Customs Simplification Act of 1954 (89 Treas. Dec. 242, T. D. 53599). Plaintiff's principal claim is that the articles are free of duty under the *eo nomine* provision for skeletons in paragraph 1764 of the Tariff Act of 1930, which reads as follows:

PAR. 1764. Skeletons and other preparations of anatomy.

It is alternatively claimed that, if not free of duty as skeletons, they would be properly dutiable at only 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as amended by T. D. 52739, supplemented by T. D. 52827, as nonenumerated manufactured articles.

The sole witness was a biologist employed by the importing company (W. M. Welch Manufacturing Co.), a dealer in educational and school supplies, particularly, "science equipment, preserved material for dissection." He stated that his duties include the buying and selling of merchandise; that he saw the merchandise in question when it was received; and that he approved payment therefor by his employer. His uncontradicted testimony establishes that the articles under consideration are skeletons composed of plastic. The witness characterized them as "sculptured skeletons" that are "made to look like the natural bone in color," which are sold to "schools throughout the country" and are used in the science courses of high schools, as well as in medical schools. He stated, further, that his company has been importing plastic skeletons since 1951, and that, theretofore, since 1933, only natural bone skeletons were imported. The only difference between the two kinds of skeletons is in the weight. Plastic skeletons are about 80 to 100 per centum heavier than those made of natural bone. So far as general use is concerned, each serves the same purpose. In the construction of both, the individual bones are held together "with screws and rods running through them, pieces of metal."

Paragraph 1764, *supra*, is a reenactment of identical paragraphs that appeared in several earlier tariff acts (paragraph 619 of the Tariff Act of 1894; paragraph 663 of the Tariff Act of 1897; paragraph 675 of the Tariff Act of 1909; paragraph 602 of the Tariff Act of 1913; and paragraph 1665 of the Tariff Act of 1922), and the statutory language has been the subject of judicial interpretation in several cases arising under different tariff acts. *Kny-Scheerer Co.* v. *United States*, 10 Treas. Dec. 35, T. D. 26594 (Abstract 7325); *Same* v. *Same*, 10 Treas. Dec. 279, T. D. 26708 (Abstract 8100); *Flowers, Anderson & Co.* v. *United States*, 26 Treas. Dec. 59, T. D. 34088; *Hensel, Bruckmann & Lorbacher* (*Inc.*) v. *United States*, 57 Treas. Dec. 775, T. D. 44038; and *Clay Adams Co.* (*Inc.*) v. *United States*, 63 Treas. Dec. 1144, T. D. 46492.

All the cited cases are to the effect that the designation, "preparations of anatomy," is limited to natural articles and does not include manufactured products. Following is a brief outline of each of the cited cases. Both of the *Kny-Scheerer Co.* cases, *supra*, arose under the Tariff Act of 1897. In the earlier one, T. D.

26594 (Abstract 7325), the merchandise, which was held to be free of duty under paragraph 663, *supra*, consisted of "dissected preparations of animals, tape worms, etc., mounted on glass plates and immersed in a preservative liquid, being inclosed in a glass jar for illustrative purposes." In the later one, T. D. 26708 (Abstract 8100), the merchandise was described as "skeletons and dissected preparations of birds, animals, and fish, some of them mounted and inclosed in glass cases and others in glass jars and immersed in a preservative liquid, all being used for illustrative purposes."

The *Flowers, Anderson & Co.* case, *supra*, involved parts of the human and animal bodies preserved in an alcoholic fluid. The court found, from plaintiff's testimony, that each of the parts in question was an anatomical specimen which "is a preparation of any organic substance either in liquid or dry for the purpose of showing the structure and condition of the subject" and that the term "anatomical specimen" includes any organ or organic substance of plants, animals, or human beings. The merchandise was held to be free of duty under paragraph 675 of the Tariff Act of 1909 as preparations of anatomy.

The most comprehensive discussion of the statutory language under consideration appears in the *Hensel, Bruckmann & Lorbacher (Inc.)* case, *supra*, that arose under the Tariff Act of 1922. There, the merchandise consisted of a collection of specimens, illustrative of the production of silk, starting from the spinning gland of the caterpillar and showing the various forms of moths, with eggs, caterpillars, and cocoons, up to a specimen of silk thread, silk cord, and silk cloth. Three of the specimens were manufactured; the others were natural. All were arranged in a cardboard case and designed to illustrate the structure and life history of the silkworm. During the course of its decision, the court referred to pertinent definitions as follows:

Anatomy is defined on page 200 of the Century Dictionary and Cyclopedia as:

That which is learned from dissection; the science of the bodily structure of animals and plants;

On page 4695 the same dictionary described preparation, in anatomy, as follows:

An animal body or any part of it prepared for anatomical purposes, or preserved to display parts already dissected. Preparations are roughly divided into dry and wet. A wet preparation is immersed in a preservative fluid, usually alcohol, often glycerin, sometimes chlorid of zinc. Dry preparations are of more varied character; a skeleton is a familiar example. Microscopic preparations are specimens, but a specimen may be a natural object upon which no work has been done, while preparation implies some special steps taken for display or preservation, or both.

The court, after quoting the foregoing definitions, expressed its conclusion as follows:

From these definitions we conclude that preparations of anatomy are natural articles from either the animal or plant kingdom which show that some special steps have been taken for their display or preservation, or both. When we say natural articles, we mean articles formed, produced, or brought about by nature, a production of nature, and not a production of the labor of man.

The *Clay Adams Co. (Inc.)* case, *supra*, which arose under the Tariff Act of 1930, cited with approval the *Hensel, Bruckmann & Lorbacher (Inc.)* case, *supra*, in holding to be free of duty, under paragraph 1764, certain actual anatomical specimens of human, animal, and plantlife, that were mounted on microscopic slides of glass.

Plaintiff's principal claim is based on the premise that the term, "Skeletons," in paragraph 1764, *supra*, is an *eo nomine* designation, without words of limitation, and that, under the principle that the designation of an article by name, without words of limitation or qualification, includes all kinds of the designated article,

the plastic skeletons in question are classifiable under paragraph 1764 and free of duty thereunder. Analysis of the paragraph, in the light of judicial interpretation of the statutory language, as hereinabove set forth, will not support the contention. Basically, the paragraph provides for merchandise within the generic classification, "preparations of anatomy." The term, "Skeletons," as it appears therein. refers to a particular variety or character of "preparations of anatomy." "A skeleton is a familiar example" of a dry preparation of anatomy, Century Dictionary and Cyclopedia, as quoted in the *Hensel, Bruckmann & Lorbacher (Inc.)* case, *supra*. Consistent with the judicial interpretation of the statutory language of paragraph 1764, as announced in the line of cases, heretofore discussed, the term, "Skeletons," is subject to the same limitation as that applied to the controlling generic classification, "preparations of anatomy." Support for this reasoning is found in the key word, "other," which, "as used in statutes such as that here involved has a modifying force, in the sense of limitation or explanation, and it may apply that force to that which precedes it or to that which follows it," *California Oil Co.* v. *United States*, 29 Cust. Ct. 44, C. D. 1442. The modifying force of the word, "other," in paragraph 1764, imparts to the term, "Skeletons," the same "sense of limitation or explanation" as has been invoked to the generic provision, "preparations of anatomy." In other words, "Skeletons," within the scope of paragraph 1764, is confined to natural products. It, therefore, follows that the plastic skeletons in question, which are manufactured—and not natural—products, are excluded from classification under paragraph 1764, *supra*. Accordingly, plaintiff's claim for free entry thereunder is overruled.

The case of *University of South California* v. *United States*, 63 Treas. Dec. 1585, Abstract 24394, cited in plaintiff's brief, will not apply herein. That case was controlled by *United States* v. *Buffalo Society of Natural Sciences et al.*, 15 Ct. Cust. Appls. 1, T. D. 42128, wherein the appellate court found the models of plants and animals under consideration were imported by and for the use of an institution incorporated solely for educational purposes and were used for the purposes of "teaching and instructing the children of the public schools of Buffalo" and held the merchandise to be free of duty as charts imported by an institution established solely for educational purposes. No comparable factual situation exists in this case.

In connection with plaintiff's alternative claim for classification of the merchandise as nonenumerated manufactured articles under paragraph 1558, *supra*, we find the record to be insufficient to support such claim. The only witness, a biologist who buys and sells merchandise for the importer of the merchandise in question, stated that he handled skeletons, prepared from natural bones, and also plastic skeletons, such as those under consideration, but admitted that he did not know of what material the skeletons in question are composed. It is "fundamental in customs law that when the classification of the collector is challenged, the dual burden of proving that such classification is incorrect and that its own claimed classification is correct, rests upon the importer." *Yardley & Co., Ltd., et al.* v. *United States*, 41 C. C. P. A. (Customs) 85, C. A. D. 533. It is also appropriate to note that "the classification by the collector and his official acts are presumptively correct," *McKesson & Robbins, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 157, C. A. D. 77, and that "the collector is presumed to have found every fact to exist that was necessary to sustain his classification," *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75. Under those principles, it is presumed that the collector found that there are skeletons, manufactured in chief value of cellulose acetate, and that such articles are similar to the merchandise in question, within the requirements of paragraph 1559, as originally enacted or as modified, *supra*, governing classification by

similitude. The evidence adduced herein by plaintiff falls far short of overcoming the presumption of correctness attaching to the collector's classification of this merchandise as articles of cellulose acetate by similitude.

For all of the reasons hereinabove set forth, the protests are overruled. Judgment will be rendered accordingly.